**UNITED STATES ex rel. SHOSHONE IRR. DIST. v. ICKES, Secretary of the Interior.**

**No. 6061.**

Court of Appeals of the District of Columbia.

Argued Feb. 15, 1934.

Decided April 9, 1934.

Chester I. Long, of Washington, D. C., and Ernest J. Goppert, of Cody, Wyo., for appellant.

Nathan R. Margold, Charles Fahy, E. E. Roddis, and Sol Rothbard, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

Under authority vested in the Secretary of the Interior, by the Act of Congress of June 17, 1902, 32 Stat. 388, and amendments thereof (see 43 USCA § 371 et seq.), an irri-

gation system, known as the Shoshone project, was undertaken for construction in Northwestern Wyoming. The project was composed of five divisions, containing approximately 184,878 acres of land. The divisions were designated as Garland, Frannie, Willwood, Heart Mountain, and Oregon Basin. The Garland division, the one here in issue, comprises 45,994 acres.

The construction of the Shoshone project was commenced in 1905; and the greater part of the Garland division was constructed by 1917. The price of acreage water rights accorded to landowners was based upon the proportionate cost of the system. For the construction of the Garland division, public notices were given by the Secretary of the Interior, as provided by law, setting forth the acreage rates. By February 10, 1917, public notices had been given covering 44,000 acres of the Garland division, at rates ranging from $45 to $59 per acre. Subsequent notices were given covering additional acreage.

In 1920 the construction of a power and electric system in connection with the Shoshone project was begun, and operation thereof was commenced early in 1922. In arriving at the amount per acre of the charges for construction, as given in the public notices, the Bureau of Reclamation did not include anything for the construction of the power system. The cost of the construction of the power system was kept as a separate item on the books of the Bureau of Reclamation, and no part thereof was allocated or charged to any division of the Shoshone project, or included in the estimate of the amount to be charged against the land.

Plaintiff company, Shoshone Irrigation District, a corporation organized under the laws of Wyoming, through its representatives, in 1926, entered into a contract with the Reclamation Bureau, providing that the company should take over the care, operation, and maintenance, of the Garland division of the Shoshone project, assuming payment of the unpaid construction indebtedness of the consenting application landowners. In the negotiations leading to the contract, the representatives of the plaintiff company requested the insertion in the contract of a provision which would give plaintiff company a proportionate share in the future profits, derived from the operation of the power plant, in an amount to be ascertained by the Secretary of the Interior, which it was thought would fully cover plaintiff's interest therein. This was embraced in section 31 of the contract, which reads as follows: "Should any net profits be realized by the United States from any of the various sources named in subsections I and J of said Act of Congress of December 5, 1924, the same will be announced and determined each year in a written statement to be sent to the district. The portion of such net profit, if any, as determined by the Secretary, shall be credited each year as follows: (a) On the annual installment project construction charges (including the construction charges payable by nonconsenting application landowners) of the district, beginning with the installment first coming due and continuing with succeeding construction installments as far as such credit will go, until the entire construction indebtedness of the district has been paid."

This action is for a writ of mandamus to compel the Secretary of the Interior to make a statement annually in writing of the net profits received by the United States from the operation of the Shoshone power plant, and to determine and state the portion of such net profits to which plaintiff company is entitled, and to credit the same annually to the plaintiff company, to be applied on its construction charge due to the United States.

From an order denying the writ, this appeal was taken.

The contract here in question was made under the provisions of subsection I of section 4 of the Act of Congress of December 5, 1924, 43 Stats. 703 (43 USCA § 501) which provides as follows: That "whenever the water users take over the care, operation, and maintenance of a project, or a division of a project, the total accumulated net profits, as determined by the Secretary, derived from the operation of project power plants, leasing of project grazing and farm lands, and the sale or use of town sites shall be credited to the construction charge of the project, or a division thereof, and thereafter the net profits from such sources may be used by the water users to be credited annually, first, on account of project construction charge, second, on account of project operation and maintenance charge, and third, as the water users may direct. No distribution to individual water users shall be made out of any such profits before all obligations to the Government shall have been fully paid." It will be observed that, by the express terms of this act, applicable to irrigation projects generally, no distribution of net profits from the operation of the power plant would be made to individual water users until all obligations to the government have been paid. In other words, the operation of the statute was sus-

pended pending the final payment of the obligations of the respective water users to the government.

While thus suspended, Congress, by the Act of March 4, 1929, § 1, 45 Stats. 1562, 1592, provided: "That the net revenues from the operation of the Shoshone power plant shall be applied, first, to the repayment of the construction cost of the power system; second, to the repayment of the construction cost of the Shoshone Dam; and third, thereafter such net revenues shall be covered into the reclamation fund."

It is contended that, in so far as the Act of March 4, 1929, affects the contract of the plaintiff company, the act is unconstitutional and void, in that it would deprive plaintiff company of vested rights which it acquired under its contract. The 1929 act, disposing of the profits derived from the operation of the power plant, is clearly within the constitutional power of Congress to enact. The most, therefore, of which plaintiff could complain would be that the act operated to impair or breach its contract. If the contract thus suffered impairment, which we think it unnecessary here to decide, the remedy for recovery is in recourse to the Court of Claims. Chicago & Northwestern Railway Company v. United States, 104 U. S. 680, 685, 26 L. Ed. 891.

The suit here is in the nature of an action to compel the specific performance of a contract between plaintiff company and the United States. Such a suit is one against the United States, and one in which the courts are without jurisdiction, unless specially accorded jurisdiction by authority of Congress, which has not been done in this case. It is elementary that, where the purpose of a suit is in effect to enforce the specific performance of a contract, this cannot be accomplished by indirect actions, either against federal officers or by mandamus. In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216; Hagood v. Southern, 117 U. S. 52, 6 S. Ct. 608, 29 L. Ed. 805; Louisiana v. Jumel, 107 U. S. 711, 2 S. Ct. 128, 27 L. Ed. 448; Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 35 L. Ed. 363.

But if plaintiff's contract was impaired by the act of 1929 and if this is not in effect a suit against the United States, the position of appellant is still clearly untenable, since the construction of the act of 1924, coupled with the interpretation to be placed upon appellant's contract relating to the distribution and allocation of the profits derived from the

operation of the power plant and the interest which appellant company would have in relation to the other divisions constructed and under construction in the Shoshone project are matters so completely within the discretion of the Secretary of the Interior as to forbid interference by writ of mandamus.

The judgment is affirmed.