**STATE OF WYOMING v. FRANKE.**

**Civil Action No. 2875.**

District Court, D. Wyoming.

Feb. 10, 1945.

892

Louis J. O'Marr, Atty. Gen., of Wyoming, John J. McIntyre, Sp. Asst. Atty. Gen., and Ray E. Lee and L. C. Sampson, Asst. Attys. Gen., for plaintiff.

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo., and Ralph S. Boyd, Atty. of Department of Justice, and Jackson E. Price, Chief Counsel of National Park Service, both of Washington, D. C., for defendant.

KENNEDY, District Judge.

This case involves the Jackson Hole National Monument located in Teton County, Wyoming. The suit is brought by the State of Wyoming in part under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, seeking a construction of the Antiquities Act of June 8, 1906, 16 U.S.C.A. § 431 et seq., and the Proclamation of the President made thereunder by which it prays a judicial declaration voiding the effects of such Proclamation and also in equity for an injunction restraining the defendant, as an appointed official of the Interior Department, from asserting management and control of the area embraced in the Proclamation. The cause purports to be under 28 U.S.C.A. §. 41(1), covering suits arising under the Constitution and laws of the United States where the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $3,000. In its complaint the plaintiff asserts that the Proclamation of the President is not authorized under the provisions of law upon which it purports to be based and is without legal authority; that the defendant, as an appointed official of the Interior Department, has asserted a right to the control and jurisdiction over the area involved to the exclusion of the State and has threatened to exclude officials of the State from the boundaries of such designated area; that such asserted control, if carried into effect, will interfere with the rights of the plaintiff in its jurisdiction over fish and wild game from which it receives a large and lucrative revenue; that such asserted control will interfere with the rights of the State in operating and maintaining many miles of highway constructed by the State within the area in that it is threatened that gates and guards will be placed at such boundaries in such a way as to interfere with the rights of the plaintiff; that such asserted management and control by the defendant will interfere with a large income from grazing fees from which a substantial revenue is derived by the State; that the Secretary of the Interior, with the assistance of the defendant, threatens to acquire by donation, purchase or condemnation, privately owned lands within the area thereby depriving the plaintiff of the benefits of taxation and the right of jurisdiction over the same; that the segregated area, by virtue of the Proclamation over which the defendant threatens management and control, is outside the scope and purpose of the Antiquities Act under which the Proclamation was issued in that such area contains no objects of an historic or scientific interest required by the Act; that the Proclamation is void and of no effect in that it is not confined to the smallest area compatible with the proper care and management of a National Monument; that by said Proclamation an attempt has been made to substitute, through the Antiquities Act, a National Monument for a National Park, the creation of which is within the sole province of the Congress, thereby becoming an evasion of the law governing the segregation of such areas; and that the plaintiff has no adequate remedy at law and will suffer irreparable damage unless accorded the relief prayed for in the complaint. The Court has attempted merely to summarize the more important claims of the plaintiff.

The defendant in its answer disputes the jurisdiction of the Court upon various grounds and alleges that the action of the President in issuing the Proclamation is not open to judicial review and in effect that the Proclamation is in fact well within the scope and purpose of the National Monument Act.

Sometime after the action was commenced, the Interior Department made a change in officials in charge of the Monument Area by which the defendant Franke was substituted for the former defendant, Charles J. Smith, and the plaintiff thereupon sought a substitution in defendants to conform to the facts, which was made upon stipulation of the parties. Prior to the trial a hearing was had by the Court upon the various legal defenses set forth in the

amended answer in the nature of a motion to dismiss, and upon motion by defendant for summary judgment, upon which argument was heard and said defenses and motions were overruled without prejudice to the defendant to assert them upon the trial or final argument in the case. Trial was had and trial briefs have been submitted.

■ The defendant now asserts that the plaintiff has not brought itself within the scope of the Act giving the Court jurisdiction of controversies arising under the Constitution or laws of the United States where the matter in controversy exceeds the value of $3,000. A decision on this point in the first instance is necessary for the Court to determine its jurisdiction. The evidence in the case, in the opinion of the Court, leads to the conclusion that the statutory value as required is satisfied. The alleged interference with the use, maintenance and control of the State highways, together with the loss in taxation which would occur to the State, and the loss of revenue from game and fish licenses in the event the defendant should exercise the control and management threatened would far exceed the statutory limitation.

■ It also seems to this Court the suit arises under the laws of the United States in that it substantially involves a controversy respecting the validity or construction of an Act of Congress. Here the question presented is as to whether or not the Proclamation is valid under the Antiquities Act, the answer to which question requires a construction of that Act. In First National Bank of Canton, Pa., v. Williams, 252 U.S. 504, at page 512, 40 S.Ct. 372, at page 374, 64 L.Ed. 690, the Court says:

"What constitutes a cause arising 'under' the laws of the United States has been often pointed out by this court. One does so arise where an appropriate statement by the plaintiff, unaided by any anticipation or avoidance of defenses, discloses that it really and substantially involves a dispute or controversy respecting the validity, construction or effect of an act of Congress. If the plaintiff thus asserts a right which will be sustained by one construction of the law, or defeated by another, the case is one arising under that law. (Citing cases.)"

In Gully v. First National Bank, 299 U.S. 109, at page 112, 57 S.Ct. 96, at page 97, 81 L.Ed. 70, the expression of the Court is as follows:

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. (Citing cases). The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."

Clearly in the case at bar, the right of the plaintiff may be sustained or defeated in a construction by the Court of the law under which the Proclamation was issued.

■ Again, it is contended by the defendant that the proofs do not support the allegations of the complaint in that the threats of the management and control of the area on the part of the defendant do not encroach upon the rights of the plaintiff. The proofs tend to show that under regulations by the Interior Department, the original defendant was directed to take charge of the management and control of the segregated area and the present defendant is only an account of a rescission by the Secretary of the Interior of that direction partially refraining from exercising such management and control on account of Congress having failed to provide an appropriation to cover such services, but the defendant reasserts that he will again, upon receiving similar direction from the Secretary of the Interior, proceed to carry said direction into effect. It appears to this Court that such previous action, coupled with the continuing threatened action on the part of this defendant, is sufficient to justify the plaintiff in seeking to invoke the jurisdiction of the Court for the restraint of a threatened act alleged to be illegal.

■■ As to the assertion by defendant that the suit is not legally laid against the defendant as an officer acting in excess of his authority, we think that in view of the allegations of the complaint and the proofs offered by the plaintiff, this suit is one in which it is claimed that the authority exercised and threatened to be exercised by him is not validly conferred by statute. In Yearsley v. W. A. Ross Construction Company, 309 U.S. 18, pages 20 and 21, 60 S.Ct. 413, at page 414, 84 L.Ed. 554, the Court says:

"In that view, it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will. (Citing cases.) Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred. (Citing cases.)"

In the circumstances of the present case, the suit is not one against the United States. In Philadelphia Company v. Stimson, 223 U.S. 605, at pages 619, 620, 32 S.Ct. 340, at page 344, 56 L.Ed. 570, it is said:

"If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. (Citing cases.) And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. (Citing cases.) And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. (Citing cases.)

"The complainant did not ask the court to interfere with the official discretion of the Secretary of War, but challenged his authority to do the things of which complaint was made. The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States."

Neither is it necessary to join the defendant's superior officers. In Colorado v. Toll, 268 U.S. 228, at page 230, 45 S.Ct. 505, at page 506, 69 L.Ed. 927, the language of the Court is as follows:

"The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States. (Citing cases.)"

The foregoing discussion would seem to dispose of the more vital of defendant's objections that the Court is without jurisdiction to determine the issues presented by the pleadings upon the merits. In this respect, this Court feels that it has a limited jurisdiction to investigate and determine whether or not the Proclamation is an arbitrary and capricious exercise of power under the Antiquities Act so as to be outside of the scope and purpose of that Act by which the President in the exercise of its provisions has exceeded or violated a discretion thereby conferred.

In this connection, it will be pertinent to set out the Antiquities Act, 16 U.S.C.A. § 431:

"The President of the United States is authorized, in his discretion, to declare by public proclamation historic landmarks, historic and prehistoric structures and other objects of historic or scientific interest that are situated upon the lands owned or controlled by the Government of the United States to be national monuments, and may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected. When such objects are situated upon a tract covered by a bona fide unperfected claim or held in private ownership, the tract, or so much thereof as may be necessary for the proper care and management of the object, may be relinquished to the Government, and the Secretary of the Interior is hereby authorized to accept the relinquishment of such tracts in behalf of the Government of the United States."

The Proclamation, known as Number 2578, dated March 15, 1943, omitting the metes and bounds description which admittedly includes 221,610 acres, is as follows:

"Whereas the area in the State of Wyoming known as the Jackson Hole country, including that portion thereof which is located in the Teton National Forest, contains historic landmarks and other objects of historic and scientific interest that are situated upon lands owned or controlled by the United States; and

"Whereas it appears that the public interest would be promoted by establishing the aforesaid area as a national monument

to be known as the Jackson Hole National Monument:

"Now, therefore, I, Franklin D. Roosevelt, President of the United States of America, under and by virtue of the authority vested in me by the act of June 4, 1897 (30 Stat. 11, 36; U.S.C., title 16, sec. 473), and the act of June 8, 1906 (34 Stat. 225; U.S.C., title 16, sec. 431), do proclaim that the Teton National Forest lands within the aforesaid area are hereby excluded from the said national forest and that, subject to all valid existing rights, the lands excluded from the said national forest together with all other lands within the following-described area are reserved from all forms of appropriation under the public land laws and set apart as a national monument, which shall hereafter be known as the Jackson Hole National Monument:

\*　　\*　　\*　　\*　　\*　　\*

"The reservation made by this proclamation supersedes, as to any of the above-described lands affected thereby, the withdrawals made for classification and other purposes by Executive Orders No. 3394 of January 28, 1921; No. 4685 of July 7, 1927; No. 4857 of April 16, 1928; No. 5040 of February 4, 1929; No. 5436 of September 2, 1930; No. 5480 of November 13, 1930; and No. 7680 of July 30, 1937.

"Warning is hereby expressly given to all unauthorized persons not to appropriate, injure, destroy, or remove any feature of this monument and not to locate or settle upon any of the lands thereof.

"The Director of the National Park Service, under the direction of the Secretary of the Interior, shall have the supervision, management, and control of the monument as provided in the act of Congress entitled 'An Act to establish a National Park Service, and for other purposes,' approved August 25, 1916 (39 Stat. 535, U.S.C., title 16, secs. 1 and 2), and acts supplementary thereto or amendatory thereof, except that the administration of the monument shall be subject to the reclamation withdrawal heretofore made under the authority of the act of June 17, 1902, 32 Stat. 388."

▮ The Antiquities Act, it will be seen, provides that the President may in his discretion declare by proclamation, historic landmarks, historic or prehistoric structures, and other objects of historic or scientific interest. It is the plaintiff's contention that the area included within the Monument is barren of any of these features while the defendant contends to the contrary. Upon these divergent contentions an issue of fact was presented and evidence offered at the trial. The plaintiff's evidence was of a negative character that there were no historic landmarks, historic or prehistoric structures or objects of historic or scientific interest included in the area established by the Proclamation. While this line of evidence was quite elaborate, in the view the Court takes of the matter, nothing could be accomplished by a detailed discussion of it in this memorandum. On the other hand, the defendant's evidence was to the effect that there were trails and historic spots in connection with the early trapping and hunting of animals formulating the early fur industry of the West, structures of glacial formation and peculiar mineral deposits and plant life indigenous to the particular area, a biological field for research of wild life in its particular habitat within the area, involving a study of the origin, life, habits and perpetuation of the different species of wild animals, all of which it is claimed constitute matters of scientific interest within the scope and contemplation of the Antiquities Act. It would likewise serve no useful purpose to elaborate upon the defendant's testimony in detail as the foregoing outline as to the trends of evidence illustrate the sharp conflict in regard to the facts. By this analysis in an ordinary suit the Court would be confronted with the task of determining where the preponderance of evidence rests and render a decision based thereon. This in substance, amounts to no more in the end than the Court's opinion of what the evidence in the case purports to show and itself implies an exercise of the Court's discretion. If there be evidence in the case of a substantial character upon which the President may have acted in declaring that there were objects of historic or scientific interest included within the area, it is sufficient upon which he may have based a discretion. For example, if a monument were to be created on a bare stretch of sage-brush prairie in regard to which there was no substantial evidence that it contained objects of historic or scientific interest, the action in attempting to establish it by proclamation as a monument, would undoubtedly be arbitrary and capricious and clearly outside the scope and purpose of the Monument Act. In the proofs in this case we have evidence of experts and others as to what the area

896

contains in regard to objects of historic and scientific interest and by that testimony this Court is bound although it may not agree that the testimony of the witnesses by the preponderance rule sufficiently supports the claim of the defendant. This is the limited scope which it seemed to the Court were issues in the case within its jurisdiction to determine.

■ The law governing such a situation has been expressed in regard to the President exercising a power through proclamation based upon a resolution of Congress in Dakota Central Telephone Co. v. South Dakota, 250 U.S. 163, at page 184, 39 S.Ct. 507, at page 509, 63 L.Ed. 910, 4 A.L.R. 1623, in the following language:

"The proposition that the President in exercising the power exceeded the authority given him is based upon two considerations: First, because there was nothing in the conditions at the time the power was exercised which justified the calling into play of the authority; indeed, the contention goes further and assails the motives which it is asserted induced the exercise of the power. But as the contention at best concerns not a want of power, but a mere excess or abuse of discretion in exerting a power given, it is clear that it involves considerations which are beyond the reach of judicial power. This must be since, as this court has often pointed out, the judicial may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion."

A more recent expression is found in United States v. George S. Bush & Co., 310 U.S. 371, where at page 380, 60 S.Ct. 944, at page 946, 84 L.Ed. 1259, it is said:

" * * * It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. (Citing cases.) As stated by Mr. Justice Story in Martin v. Mott, supra, 12 Wheat. pages 31, 32, 6 L.Ed. 537: 'Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts.'

"For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains. Under the Constitution it is exclusively for Congress, or those to whom it delegates authority, to determine what tariffs shall be imposed. Here the President acted in full conformity with the statute. No question of law is raised when the exercise of his discretion is challenged."

■ In short, this seems to be a controversy between the Legislative and Executive Branches of the Government in which, under the evidence presented here, the Court cannot interfere. Undoubtedly great hardship and a substantial amount of injustice will be done to the State and her citizens if the Executive Department carries out its threatened program, but if the Congress presumes to delegate its inherent authority to Executive Departments which exercise acquisitive proclivities not actually intended, the burden is on the Congress to pass such remedial legislation as may obviate any injustice brought about as the power and control over and disposition of government lands inherently rests in its Legislative branch. What has been said with reference to the objects of historic and scientific interest applies equally to the discretion of the Executive in defining the area compatible with the proper care and management of the objects to be protected.

■ The Court is not impressed with the technical argument of counsel for plaintiff that the designated area is not consistent with the preface to the Proclamation in referring to the "Jackson Hole Country." The area over which control is threatened is in any event limited to that defined in the Proclamation. Neither can the Court take any judicial interest in the motives which may have inspired the Proclamation described as an attempt to circumvent the Congressional intent and authority in connection with such lands. The argument and propaganda which have been circulated in forums and through the press of the Nation, and even volunteered for the use of the Court, largely concern a policy of segregating the area for its natural scenery and inherent beauty as a national playground or in the alternative, a policy representing in effect an encroachment upon the State's sovereignty over lands within its boundaries by adding to the already large acreage of public lands over which the Federal

Government exercises authority, more lands and more restrictive measures, thereby retarding the State's growth and development. Such discussions are of public interest but are only applicable as an appeal for Congressional action.

■ The case has been considered primarily under the prayer for injunctive relief but if considered under the Declaratory Judgment Act, the result must be the same. Where an injunction will not lie a declaratory judgment cannot be substituted for it. Great Lakes Company v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

It follows that the Court will find generally for the defendant and counsel for defendant will prepare and submit findings of fact and conclusions of law in harmony with this memorandum but including basic facts as are fundamental, together with an appropriate judgment dismissing plaintiff's cause of action, all in collaboration with counsel for plaintiff, on or before March 10, 1945. The, findings and conclusions may carry such exceptions to be allowed as counsel elect.