**LEWIS et al. v. UNITED STATES.**

**RICHMOND INV. CO. et al. v. UNITED STATES.**

Nos. 13206, 13207.

United States Court of Appeals
Ninth Circuit.

Nov. 13, 1952.

Writ of Certiorari Denied March 9, 1953.
See 73 S.Ct. 647.

184

Sherman & Peters, San Franciso, Cal., for appellants.

Wm. Amory Underhill, Asst. Atty. Gen., Lands Division, Washington, D. C., M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., and Roger P. Marquis, Elizabeth Dudley, Attys. Dept. of Justice, Washington, D. C., for appellee United States.

Before STEPHENS, BONE and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

In 1942 the United States, acting through the Attorney General, sought to acquire by eminent domain the fee simple title to certain parcels of land owned by appellants herein. The owners of the several parcels, sought to be acquired, resisted the taking and, in effect, posed the following problem:

"Whether the Housing Administrator, acting as an agency of the Government, was authorized by Congress under the Lanham Act (the Act of October 14, 1940 (Public No. 849, 76th Congress), [54 Stat. 1125], 42 U.S.C.A. § 1521 et seq.), to condemn the fee simple title absolute instead of a lesser quantum of interest, such as a leasehold, for the temporary wartime housing as specified in said Lanham Act." [1]

The compensation for the taking was claimed to be neither just nor reasonable. The trial court held the authority for the taking ample, and ordered awards for the owners in the sums found by the juries as just compensation. The landowners appealed.

Congress, under the Lanham Act, has delegated wide authority to the Federal Works Administrator to condemn lands for use in carrying out the directives of the Act.[2] In Section 1(a) the Administrator is given power to acquire land by "purchase * * * or condemnation". No distinction is made in the Act between what may be purchased and what may be condemned. And it now is well established that the government's power to condemn is coextensive with its power to purchase. United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 554, 66 S.Ct. 715, 90 L.Ed. 843; Polson Logging Co. v. United States, 9 Cir., 1947, 160 F.2d 712, 714; 40 U.S.C.A. § 257. Thus, if the Administrator might purchase the fee simple title in property for use under the provisions of the Lanham Act, he may also acquire the fee simple title by condemnation proceedings

---

1. The quotation is from appellants' opening brief, at page 4, as the issue on appeal.

2. 54 Stat. 1125, as amended Jan. 21, 1942, 56 Stat. 11:

"Section 1. In order to provide housing for persons engaged in national-defense activities, and their families, and living quarters for single persons so engaged, in those areas or localities in which the President shall find that an acute shortage of housing exists or impends which would impede national-defense activities and that such housing would not be provided by private capital when needed, the Federal Works Administrator (hereinafter referred to as the 'Administrator') is authorized:

"(a) To acquire prior to the approval of title by the Attorney General * * * improved or unimproved lands or interests in lands by purchase, donation, exchange, lease * * *, or condemnation * * *.

"(b) By contract or otherwise * * * to make surveys and investigations, plan, design, construct, remodel, extend, repair, or demolish structures, buildings, improvements, and community facilities, on lands or interests in lands acquired under the provisions of subsection (a) * * * Provided, That the cost per permanent family-dwelling unit shall not exceed an average of $3,750 for all types of construction for those units located within the continental United States * * * Provided further, That where the Administrator shall consider that there is no reasonable prospect of disposing of such housing to meet a need extending beyond the emergency he shall construct temporary units * * *."

Appellants' arguments against the Administrator's power to acquire a fee simple title in land center upon the adjective "temporary" which they have read into the Lanham Act, and by which they have characterized the extent and scope of the Act. The Lanham Act confines the scope of the Administrator's authority with the word "temporary" only with reference to the type of units to be constructed "where the Administrator [in his discretion] shall consider that there is no reasonable prospect of disposing of such housing to meet a need extending beyond the emergency". This limitation does not pertain to the land on which the housing is situated. 42 U.S.C.A. § 1521.

Appellants further argue that since the Act deals only with emergency defense housing which must be "disposed of as promptly as may be advantageous under the circumstances and in the public interest"[3] after the national emergency declared by the President on September 8, 1939, ceases to exist, a leasehold would suffice, and that the condemnation of the fee simple is unnecessary, and consequently unauthorized. The Lanham Act does not limit the quantum of interest in property which may be taken for public use. Instead, subsection (a) declares, that the Administrator may acquire "lands or interests in lands", and subsection (b) declares that he may build permanent or temporary housing units on the "lands or interests in lands" acquired. The Administrator was thus given discretion to acquire either the entire fee, or a lesser interest in the land. Nor does the requirement that the acquired property be disposed of as quickly as possible after the emergency ceases preclude the acquisition of the entire fee. For "the government, just as anyone else, is not required to proceed oblivious to elements of cost" in the exercise of its power of eminent domain. United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 554, 66 S.Ct. 715, 719, 90 L.Ed. 843. And, although the Lanham Act directs the Administrator to dispose of the property, he must do so only "as promptly as may be advantageous under the circumstances and in the public interest." [Emphasis ours.] The Administrator was thus under a duty to consider and exercise his best discretion in the public interest in both acquiring and disposing of the property. See Old Dominion Land Co. v. United States, 1925, 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162.

Congress, by the Lanham Act, has empowered the Administrator at his discretion to acquire the land needed for defense housing by condemnation, and to take the interest which in his opinion will be most advantageous to the government. There is no claim of bad faith in this case, and we cannot say that the evidence required a finding that the authorized officer abused his discretion in determining the amount and interest in land he decided to condemn. Therefore, his decision was final. United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, 392; Simmonds v. United States, 9 Cir., 1952, 199 F.2d 305.

The California Code of Civil Procedure (Deering, 1949 ed.) § 1239,[4] which appellants cite as authority for limiting to an easement the interest which the Administrator may acquire by eminent domain, is not applicable here. For even where the statutes upon which the condemnation it based require that the practice and procedure in condemnation proceedings in federal courts must be according to the "forms and methods of procedure afforded by

---

3. Lanham Act, § 4, 54 Stat. 1125, as amended June 28, 1941, 55 Stat. 363, 42 U.S.C.A. § 1541.

4. "§ 1239. [Estates and rights subject to be taken.] The following is a classification of the estates and rights in lands subject to be taken for public use:

"1. A fee simple, when taken for public buildings or grounds, or for permanent buildings, for reservoirs and dams, and permanent flooding occasioned thereby, or for an outlet for a flow, or a place for the deposit of debris or tailings of a mine, or for the protection of water bearing lands from drought therefrom of any character whatsoever from any adjacent lands.

"2. Except as provided in subsections 3 and 4, or specifically in any other statute, an easement, when taken for any other use; provided, * * *."

186

the law of the State in which the court sits * * * [t]hey do not, and could not, affect questions of substantive right * * *." United States v. Miller, 1943, 317 U.S. 369, 380, 63 S.Ct. 276, 283, 87 L.Ed. 336. Congress has the power and the right to condemn the fee title in lands for the public use under the power of eminent domain. Where, as in this case, Congress has authorized a public officer to condemn the fee title, a state's declaration of substantive law or policy to the contrary is not controlling. United States v. Montana, 9 Cir., 1943, 134 F.2d 194, 197. Moreover, whereas the proceedings discussed in the Miller case were predicated upon statutes wherein Congress required that state "practice, pleadings, forms and proceedings" be followed in the federal courts,[5] no such requirements are to be found in the Lanham Act.

Appellants further contend that since neither the Complaints in Condemnation nor the Declarations of Taking contain statements of finding by the President "that an acute shortage of housing exists or impends [in the Richmond, California, area] which would impede national-defense activities and that such housing would not be provided by private capital when needed," 42 U.S.C.A. § 1521, that the complaint fails to state a cause of action under the Lanham Act, and that therefore the district court had no jurisdiction to entertain the condemnation proceeding.

The required elements of a Declaration of Taking are set forth in Title 40 U.S.C.A. § 258a,[6] all of which have been met here.

While appellants claim here that the Administrator exceeded his authority, the claim was not raised in the trial court. Nevertheless, we have considered it here, and find against such claim.

Affirmed.

5. Act of August 1, 1888, 25 Stat. 357, c. 728, § 2; and Act of April 24, 1888, 25 Stat. 94, c. 194, 33 U.S.C.A. § 591.

6. " * * * Said declaration of taking shall contain or have annexed thereto—
"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.
"(3) A statement of the estate or interest in said lands taken for said public use.
"(4) A plan showing the lands taken.
"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken."