**UNITED STATES of America, Petitioner for Condemnation,**

**v.**

**CERTAIN PARCELS OF LAND IN CITY OF CHEYENNE, LARAMIE COUNTY, State of WYOMING; John C. Arp and Mildred K. Arp; The Children's Hospital Association, a Colorado corporation; The City of Cheyenne, Wyoming and The County of Laramie, Wyoming, and unknown owners, Defendants.**

**Civ. No. 2901.**

United States District Court
D. Wyoming.
May 5, 1956.

John F. Raper, Jr., U. S. Atty., for District of Wyoming, Cheyenne, Wyo., for plaintiff.

Norman B. Gray and J. J. Hickey (of Ellery, Gray & Hickey), Charles E. Lane, Cheyenne, Wyo., for John C. Arp and Mildred K. Arp.

CHRISTENSON, District Judge.

This is an action in which the power of the Government to condemn the fee simple title to certain land in which it theretofore had acquired a leasehold interest is questioned. The issues here, raised by various motions, directly concern the pleadings. Their determination largely turns upon an interpretation and appraisal of Section 605(a) of the Housing Act of 1950, 42 U.S.C.A. § 1585(a), which reads:

"(a) The Administrator may continue by lease or condemnation any interest less than a fee simple in lands heretofore acquired by the Administrator for national defense or war housing or for veterans' housing (whether of a permanent or temporary character), or held by any Federal agency in connection therewith, and may acquire, by purchase or condemnation, a fee simple title to or lesser interest in any such lands if the Administrator determines that the acquisition of such fee simple or lesser interest is necessary to protect the Government's investment or to maintain the improvements constructed thereon, or that the cost of fulfilling the Government's obligation to restore the property to its original condition would equal or exceed the cost of acquiring the title thereto."

The Government came into possession of the land involved in this case in October, 1943, when it filed a declaration of the taking of a leasehold interest for housing purposes under the Lanham Act, Act of October 14, 1940, Ch. 862, 54 Stat. 1125, as amended, 42 U.S.C.A. § 1521 et seq. At the time of the original taking, the land was owned by Maude B. Van Tassell (hence references in the record to the "Van Tassel Housing Project"). Title was acquired by the defendants, John C. Arp and Mildred K. Arp thereafter. There are other parties defendant: The Children's Hospital Association because of its record interest in mineral rights, and the City of Cheyenne because the land has been platted for streets. The Arps are the only defendants who are contesting the present proceeding as far as the record discloses.

The estate of the Government taken in 1943 was described as:

"* * * the exclusive use for a period of one year, with the right to renew from year to year for the duration of the war emergency as determined by the President, and three years thereafter, together with all improvements thereon; with the right in the Government to demolish any and all improvements, if any; and with the right in the Government at the termination of such period to remove any or all improvements placed thereon by said Government." (Supplemental Declaration of Taking.)

A housing project was developed, and ever since maintained, on this land by the Government. Nominal land rental ($2 per year) was agreed upon between the parties and confirmed by the Court. The rights of the United States were renewed from year to year, and the stipulated rental paid and accepted, for the period expiring December 22, 1954. Rental for the period December 22, 1954 to December 22, 1955, was tendered by the Government but was rejected by the Arps. On May 6, 1955, a motion to terminate the condemnation proceedings and a request for appraisal of the lands were filed by the Arps in reliance upon 42 U.S.C.A. §§ 1524, 1592d. The record indicates no ruling on this motion yet.

On August 25, 1955, the United States filed a complaint for condemnation and a declaration of taking of the fee of said lands because of the asserted determination by the Acting Public Housing Commissioner that "the acquisition of a fee simple title in and to said lands is necessary to continue in use the housing constructed on said lands in the orderly demobilization of the war effort, to maintain the improvements constructed thereon, and to protect the investment of the United States in said improvements."

An answer to this complaint for condemnation was filed by the Arps. The Government's motion to strike the affirmative defenses set out therein was sustained, with leave to amend, by the Honorable T. Blake Kennedy, United States District Judge for the District of Wyoming, now retired. The motion of the Government to strike the affirmative defenses set out in the Arps' amended answer filed pursuant to such leave, the motion of the said defendants for leave to amend their amended answer by adding a fourth affirmative defense, their motion for leave to file a supplemental answer and their motion, already referred to, to terminate the condemnation proceedings, present the issues of law now to be decided.

The Lanham Act, with its numerous amendments, successive extensions of deadlines, and detailed provisions is rather complex. No comprehensive analysis of it will be attempted here since this may be found in some of the cases which are cited in connection with other points. Nor will I undertake to follow the sequence of amendments as they relate to the various phases of the property's development, or to examine certain other points elaborately treated in the briefs concerning which there now seems little question. Suffice it to say, in getting to the vortex of the dispute, that the Acting Commissioner of the Public Housing Administration who signed the declaration of taking of the fee, then had authority to act for the Housing and Home Finance Administrator to the extent of the powers of the latter on the subject;

that the improvements on the land comprise "temporary housing" rather than "permanent housing" within the purview of the Lanham Act; that after the extended date of July 1, 1954, it was the announced policy of Congress with respect to such housing that it should be removed or otherwise disposed of as promptly as practicable and in the public interest, 42 U.S.C.A. §§ 1524, 1541, 1553, 1584, and that this housing (aside from the disputed effect of section 1585(a), supra), was not excepted from such policy. See Shanks Village Residents Association, Inc., v. Cole, 1954, 95 U.S.App. D.C. 60, 219 F.2d 28, certiorari denied 349 U.S. 906, 75 S.Ct. 582, 99 L.Ed. 1242.

In their amended answer, the Arps allege in substance that the action of the Administrator (Acting Commissioner) in taking the fee was not necessary in connection with the demobilization of the war effort; that it was not necessary to maintain the improvements since the Government already has possession by virtue of the leasehold interest and that it could thereunder maintain possession for a substantial period; that the defendants had not indicated any intention to interfere; that the acquisition of the fee was not necessary to protect the investment of the United States in that the United States already had acquired the right to occupy the land for housing during the war emergency and for three years thereafter, with the right at the termination of the war emergency to realize the greatest possible salvage out of the improvements by any appropriate salvage or liquidation proceedings open to it under the provisions of the original condemnation judgment and the law applicable thereto; that it has adequate time to liquidate its investment by sale of the right of occupancy or by continued use for the balance of the three-year period and by the removal of the housing improvements or the scrapping and salvage of the same; that the Government has already realized in net rental far in excess of its investment; that the defendants have offered, and now offer, to pay to the United States the full val-

ue of the remaining housing improvements to be arrived at by appraisal in accordance with the suggestion of the answering defendants or by any other method of appraisal that the Court might designate, and that the purported determination that the acquisition of the fee was necessary to protect the investment of the United States was unauthorized, without foundation, arbitrary and in bad faith. Must such allegations of the affirmative defense be stricken on plaintiff's motion as not constituting a defense to the taking of the fee?

■ A motion to dismiss, or as in this case, a motion to strike alleged defenses, like a demurrer, admits only facts well pleaded, and mere conclusions of law, not warranted by the asserted facts have no efficacy. Barnidge v. United States, 8 Cir., 1939, 101 F.2d 295; Keyes v. United States, 1941, 73 App.D.C. 273, 119 F.2d 444, certiorari denied 314 U.S. 636, 62 S.Ct. 70, 86 L.Ed. 510.

■ The defendants are correct that the statute relied upon does not authorize the Administrator to take the fee merely because in his judgment this is necessary for the orderly demobilization of the war effort. The statute relied upon does not specify this as among the possible bases of such action by him. Congress, itself, has laid down the rules for the orderly demobilization of the war effort. It is conceded that the cost of fulfilling the Government's obligation to restore the property to its original condition prior to its surrender to the owners would not equal or exceed the cost of acquiring title thereto, so that this possible basis of the Administrator's action must be immediately excluded (except as it may suggest that Congress in adopting the entire subsection was cost conscious). It follows that if the taking of the fee is authorized, it must be because there has been a sustainable determination that "the acquisition of such fee simple * * * interest is necessary to protect the Government's investment or to maintain the improvements constructed thereon, * * *."

■ No plausible reason suggests itself, and none has been advanced, why the acquisition of the fee might be necessary in this case "to maintain" the improvements unless by that phrase "to retain" the improvements indefinitely is meant. Clearly the improvements could be maintained without recourse to Section 1585(a) until they were removed or otherwise disposed of in accordance with other provisions of the Act within the term which had already been reserved. The unlimited power to retain the improvements indefinitely at the discretion of the Administrator without reference to the general policy established by Congress for the disposition of temporary housing would seem incongruous and of questionable validity. We are, therefore, led to the inquiry of whether there is any reasonable basis for his determination that the acquisition of the fee was necessary to protect the Government's investment, in the light of the allegations of fact set out in the affirmative defense.

■■ If there is any reasonable basis for the exercise of a power granted by Congress to an administrative officer in eminent domain proceedings, it is beyond the jurisdiction of the Court to review his determination, at least in the absence of bad faith. United States v. 243.22 Acres of Land in Village of Farmingdale, Town of Babylon, Suffolk County, N. Y., D.C.E.D.N.Y., 1942, 43 F.Supp. 561, affirmed 2 Cir., 129 F.2d 678, certiorari denied Lambert v. United States, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558; Lewis v. United States, 9 Cir., 1952, 200 F.2d 183, certiorari denied 345 U.S. 907, 73 S.Ct. 647, 97 L.Ed. 1343; United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, certiorari denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; United States v. Threlkeld, 10 Cir., 1934, 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; Colorado Central Power Co. v. City of Englewood, 10 Cir., 1937, 89 F.2d 233; United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209; United States v. Gettysburg Electric Ry. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; State of Wyoming v.

Franke, D.C.D.Wyo., 1945, 58 F.Supp. 890; Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L. Ed. 1167; United States v. Southerly Portion of Bodie Island, N. C., D.C.E. D.N.C., 1953, 114 F.Supp. 427; United States v. 40.75 Acres of Land, More or Less, Situate in Du Page County, Ill., D.C.N.D.Ill.E.D., 1948, 76 F.Supp. 239. Grants by Congress of the power of eminent domain within constitutional limitations are to be interpreted liberally. 3 Sutherland, Statutory Construction, 3 ed., § 6505, pp. 257–258. Here, aside from the question of authority, there are no facts alleged upon which a claim of bad faith could be predicated.

The Lanham Act, as amended, set up an integrated program for wartime and defense housing involving disposition, as well as acquisition and maintenance. The overall object of the legislation is clearly within the sovereign power of eminent domain and the means for the accomplishment of this object is for Congress, its decision being entitled to deference until it is shown to involve an impossibility. 42 U.S.C.A. § 1521 et seq.; United States ex rel. Tennessee Valley Authority v. Welch, 1946, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843; Old Dominion Land Co. v. United States, 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162; United States v. Gettysburg Electric Ry. Co., supra.

Congress has given the Administrator power to condemn the fee in such cases as this if in his judgment this is necessary in order to protect the Government's investment. I am of the opinion that within that power the Administrator could reasonably determine that, in furtherance of the program of acquiring, maintaining and disposing of this temporary housing, the acquisition of the fee might permit the disposition of the improvements more advantageously to the Government and would thus be appropriate for the protection of its investment, which is substantial. The Administrator, within the powers granted to him by law, had a discretion to determine the means best suited to acquire, main-

tain or dispose of property in connection with federal housing. He was not required, in this program, to proceed oblivious to the element of cost, and it does not lie with the Court to set aside the exercise of his discretion because he did not do so. Lewis v. United States, supra; Old Dominion Land Co. v. United States, supra; United States ex rel. Tennessee Valley Authority v. Welch, supra.

The defendants say it was unnecessary to protect the Government's investment because from rental income over the years the housing project already has yielded to the Government considerably more than the cost to it. I doubt that the recoupment of a possible loss previously incurred by the Government, without reference to the intrinsic value of physical improvements existing at the time of the acquisition, is within the purview of Section 1585(a). The determination of the prior loss, or whether one were actually incurred, involving as it would the evaluation of indirect as well as direct expense, would seem impracticable. What weight would be given to the general administrative expenses of government or the general costs of the Federal Housing Administration allocable to the project? Moreover, the tenor of the legislation itself constantly suggests investment in existing improvements.

The term "investment" as used in the Act relates, I believe, to an investment in physical improvements in existence at the time of the taking in question. In this sense the protection of an investment would not be limited to, and in my opinion would not mean, the recovery of a possible past loss. The improvements as they exist upon the ground constitute an investment which the Government under the Act is entitled to protect by the means thereby provided. To say that the Government is entitled to realize only what it invested and no more, without reference to the existing value, appears unrealistic. The duty of a trustee to conserve an estate is not necessarily discharged by disposing of it without loss. If, as asserted by the de-

fendants, the Government already has realized more than the cost of the improvements from rental income, could it protect its investment by giving the improvements away?

■ Nor do I agree with the defendants that Section 1585(a), as well as Sections 1553 and 1584, contemplate a salvage or liquidation operation limited to moving or demolishing the housing improvements, or selling them without reference to the land. If so, the adoption of Section 1585(a) would have been pointless as respects temporary housing to which it specifically refers. Granted that the two sections last mentioned do so, the purpose of the first seems to enlarge the permissible manner of realization on the investment for the greater possible advantage to the Government.

■ The taking of property, or an interest in property, by eminent domain is permissible only when the property which is so condemned will be directed to a public use. But a public use, constitutionally acceptable, is not excluded because the fee is condemned in order more advantageously to salvage the value of improvements placed upon land theretofore leased by the Government in the exercise of its proper powers. See Old Dominion Land Co. v. United States, supra; see also United States v. State of New York, 2 Cir., 1947, 160 F.2d 479, certiorari denied 331 U.S. 832, 67 S.Ct. 1512, 91 L.Ed. 1846; Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171. The latter case, while not closely in point, had in view the broad power of acquisition, with an ultimate disposition advantageous to the Government. What is said in these cases disposes of the defendants' broad contention that the acquisition of the fee was necessarily for a non-public use, and therefore, was in violation of the defendants' constitutional rights.

Defendants concede that the Government had the right to salvage and liquidate what it could of its investment by any appropriate method of "salvage or liquidation open to it", but deny that it has the right to put in new money to enable it to recover more of its original investment than it could by salvage or liquidation operations in the limited sense. But the two in this case are not necessarily separate. The Act does not limit the Government to means which exclude the acquisition of the fee. It expressly permits it if the Administrator deems this necessary to protect the Government's investment. If, by acquisition of the fee, the Government can salvage and liquidate its investment and in doing this can so successfully protect it as to bring additional money into the public treasury in the process, who is to say that the more advantageous liquidation itself renders the action of the Administrator either arbitrary, capricious or in bad faith? The exercise of prudence by an administrative officer cannot be regarded as bad faith. City of Norton v. Lowden, 10 Cir., 1936, 84 F.2d 663. True, the judgment of the Administrator may prove in error. It is beside the point to say that the Court might have exercised this administrative discretion differently. Eventually, it may turn out that the Administrator could have protected the Government's investment better by salvaging and liquidating it without acquisition of the fee (which will involve the payment to the defendants of its fair market value as determined by the jury). But probably he would be less likely to err in his judgment as to the best means of liquidation than would the Court were it to assume to exercise power of this decision. The point is, however, that with him, and not with the Court, has been entrusted by Congress the duty and power to decide the question.

■ The defendants suggest, in any event, that the taking of the fee to protect the Government's investment is not necessary because they are willing to pay the full value of the existing improvements to the Government. What the value of these improvements might be on the market separately, with the fee outstanding in others not in privity with the prospective purchasers, may be something different than what it would

be if the improvements could be sold as a part of the fee simple title. Moreover, the time element may be important, for if the Government must sell its interest in the improvements within the limited period of its remaining leasehold interest, it would be selling them "under the gun" so to speak, and a similar result might be encountered if the prospective purchasers were limited to the owners of the fee. The Administrator, rather than the defendants, has been granted the discretion to determine the means of disposal. Moreover, the taking occurred at the time of the filing of the declaration of taking, at which time the fee vested in the Government. It could not be divested by a subsequent offer to pay value.

■ On May 6, 1955, and prior to the filing of the declaration of taking, the defendants filed a motion to terminate the Government's possession and to fix the reasonable value of the improvements, in connection with which the defendants offered to pay the full and fair value of such improvements. However, this motion was filed under the mistaken view that the statute authorized the termination of the Government's leasehold possession upon payment of the fair market value of the improvements, whereas, by its terms its application was limited to land retained by the Government after June 30, 1954, which had not been used for the purpose of the Act. 42 U.S.C.A. § 1592d(c). Since no ruling has yet been entered of record on this motion, a notation should be made of its denial.

On a related point, the defendants have now moved the Court for leave to amend their amended answer by interposing a fourth affirmative defense, alleging that the housing involved in this case is "temporary housing" under the Act and that its acceptance as permanent housing by the City of Cheyenne has been rescinded, so that the provisions of Section 1592d (c) apply. As has already been pointed out, this subsection has no application. Since, for the purposes of disposing of the other matters before me, I have assumed that the housing is temporary, the tendered amendment would serve no other useful purpose.

The defendants' tendered supplemental answer alleges in substance that the United States Attorney in January, 1956, advised counsel for the defendants in the course of efforts to settle this case, that an official of the Public Housing Administration "with authority to negotiate settlement of the litigation" was in his office; and that at an ensuing conference, counsel for the defendants were advised that an attorney for the Public Housing Administration, then present at the conference, "had the necessary authority to negotiate a settlement". It is further alleged that thereafter, on January 7, 1956, "the defendants in writing delivered their acceptance of the terms of the settlement offer by the plaintiff", and defendants allege upon information and belief that said acceptance was then forwarded to the Department of Justice and to the Public Housing Administration in Washington, D. C. and was by each of said departments considered and approved and that counsel for defendants were so advised on or about January 17th, 1956, and that on said date were further advised that all that remained to be done to dispose of, and settle, the litigation, was the drafting of certain instruments necessary to carry it into effect. It is further alleged that an agreement then was reached as to the procedure and that in reliance upon the conduct of plaintiff's agents, the defendants, to their detriment, incurred and paid, or have become obligated to pay, expenses of not less than $2,500 and have arranged at the loss of substantial time to take over the management of the improvements. It is further alleged that the settlement was never completed. The Court is asked by the supplemental answer to enter its order requiring the parties to carry out the "settlement" or, in the alternative, that the plaintiff's complaint in condemnation be dismissed.

■ If a settlement were reached as suggested in these supplemental allegations, a difficult problem involving the jurisdiction of this Court would be posed.

No jurisdiction has been conferred in a suit against the United States for damages on an express or implied contract involving more than $10,000, 28 U.S.C.A. § 1346(a) (2); nor does it seem to exist in an action to require preferential treatment with regard to the sale of surplus property. See Seiden v. Larson, 1951, 88 U.S.App.D.C. 258, 188 F.2d 661, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; see also Breen v. Housing Authority of City of Pittsburg, D.C.W.D.Pa.1954, 119 F.Supp. 320. Jurisdiction to award specific performance of a contract as against the Government, whether on complaint or counterclaim, has not been conferred. Bakewell v. United States, D.C., 28 F.Supp. 504, affirmed 8 Cir., 110 F.2d 564, certiorari denied 310 U.S. 638, 60 S.Ct. 1081, 84 L.Ed. 1407; Boeing Air Transport, Inc., v. Farley, 64 App.D.C. 162, 75 F.2d 765 and Pennsylvania Airlines, Inc. v. Farley, 64 App.D.C. 166, 75 F.2d 769, certiorari denied in both cases in Pacific Air Transport v. Farley, 294 U.S. 728, 55 S.Ct. 637, 79 L.Ed. 1258; United States ex rel. Shoshone Irr. Dist. v. Ickes, 63 App.D.C. 167, 70 F.2d 771, certiorari denied 293 U.S. 571, 55 S.Ct. 82, 79 L.Ed. 670.

■ Apparently in anticipation of these objections, the defendants in the oral argument suggested that they were not relying upon any claimed compromise or settlement, but rather upon the theory of an equitable estoppel which they maintain should be interposed in line with the decision in United States v. Certain Parcels of Land, etc., D.C.S.D. Cal.C.D.1955, 131 F.Supp. 65. Assuming that the facts in that case created an estoppel as against the Government in a condemnation proceeding, the circumstances in a similar direction as alleged in the supplemental answer here fall far short. Moreover, if I consider in line with Federal Rules of Civil Procedure, Rules 12(b) (6), 56, 28 U.S.C.A., matters outside the pleadings which were presented at the oral argument, it seems clear that there was no settlement con-cluded by any officer actually authorized to bind the United States. As recognized in Judge Mathes' able decision in the case last cited, 131 F.Supp. at page 73, lack of authority is fatal to a claim of estoppel based upon the conduct of an agent, and all persons who deal with any agent of the United States are charged with notice of his lawful authority. See also Annotation, "Applicability of doctrine of estoppel against Government and its governmental agencies," 1 A.L.R.2d 338; also supplemental decisions reported in 1956 A.L.R.2d Annual Cumulative Volume, pp. 25–26.

While suggesting that a settlement had been concluded, the pleading is so drawn as to avoid any such direct assertion, and the matters before the Court, accepted by both sides in the argument, show hardly more than that the negotiators reasonably hoped that their efforts would culminate in an authorized settlement. In fact, it appears to have been understood between them, after such discussions as were carried on had been substantially concluded, that the proposed settlement should be submitted by the defendants in the form of an offer for the approval of the Attorney General, which was never forthcoming. Thereafter, the written offer of the defendants was expressly rejected by the Government. The matters brought to the attention of the Court by common consent, relating to the facts pleaded, were not formally received in evidence. There seemed no question between the parties concerning them but opportunity will be afforded both sides to make them of record at the beginning of the trial, so that if I have an incorrect impression of them, this, and any of my views based thereon, may be corrected. For the present, I am satisfied that no good reason has been demonstrated for leave to file the supplemental answer.

Apparently, there is a feeling on the part of the Arps that the Government is attempting unjustly to deprive them of their property despite generous rental terms extended by the defendants and

their willingness to fairly pay for the improvements. If the measure of the Court's duty were the justification of this, it would have to be admitted that such feeling is at least understandable. It would have to be recognized, too, that the other side of the coin would bear a little different imprint. The Government by private sale of the improvements separately to the owners of the fee, no matter how circumspectly the negotiations might be carried on or the values fixed, might be subject to criticism, justified or not, should future developments indicate a greater worth. And the Government can hold the fee only by paying just compensation to the defendants through this proceeding. The combined sale of land and improvements to the high bidder— and presumably the defendants would be free to bid—would have its merits. The Court, as well as the parties, however, is controlled by the law, not by collateral matters. My judgment is that the taking was authorized by law and that defendants' remedy is a determination by jury of the fair market value of the fee so that they may be paid that amount with legal interest. If I am wrong in this, the Appellate Court to which I am told this case is destined, can set it right. If the defendants must take just compensation rather than keep the property and this is an inadequate remedy, it is a shortcoming inherent in every lawful exercise of the power of eminent domain. For the present, it would seem that the interests of the parties can best be subserved and their further feelings spared by an expeditious trial on the issue of just compensation.

The motion of the plaintiff to strike the affirmative defenses contained in defendants' amended answer is granted; the defendants' motion for leave to amend their amended answer by filing a fourth affirmative defense is denied; their motion to terminate the condemnation proceedings is denied and their motion for leave to file the tendered supplemental answer is denied. The case will be set down for trial on the issue of just compensation as soon as practicable.