Craig McDONALD, Appellant, (Plaintiff),

v.

MOBIL COAL PRODUCING, INC.; Brad Hanson; Peter Totin; and Bert Gustafson, Appellees, (Defendants).

No. 89–146.

Supreme Court of Wyoming.

Nov. 20, 1991.

Mary Elizabeth Galvan and Kennard F. Nelson of Kirkwood, Nelson & Galvan, Laramie, for appellant.

Francis E. Stevens of Stevens, Edwards & Hallock, Gillette; Theodore A. Olsen and Jack Stewart of Sherman & Howard, Denver, Colo., for appellee Mobil Coal Producing Inc.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

This employment termination case comes before the court on appellee Mobil Coal Producing's motion for rehearing. In our previous decision, *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990) (*McDonald I*), we ruled that summary judgment in favor of the appellees must be reversed and the case remanded for further proceedings. The five justices of this court rendered a total of four opinions, including a special concurrence and two separate dissents. Following our decision, we granted Mobil's petition for rehearing to review and clarify our earlier decision.

## FACTS

The relevant facts of this case are more fully set out in *McDonald I*. We need not refer to them here in detail except as they become pertinent to our discussion of the legal issues on rehearing.

Appellant Craig McDonald challenged his dismissal from employment with Mobil at Mobil's Caballo Rojo coal mine in Campbell County, Wyoming. After the trial court granted summary judgment against him, he appealed to this court, claiming breach of contract based on the terms of his employee handbook, and breach of the covenant of good faith and fair dealing. A plurality of this court rejected the claims that Mobil's handbook constituted a valid contract sufficient to modify the terms of McDonald's at-will employment and that Mobil was subject to the implied covenant of good faith and fair dealing. However, a different plurality reversed summary judgment and remanded for a determination of whether the principle of promissory estoppel applied to the facts of this case.

Justice Golden, specially concurring, rejected the application of promissory estoppel, stating that he would have remanded to resolve the ambiguity in the effect of the disclaimer contained in Mobil's employee handbook. Justice Cardine, dissenting, found the disclaimer effective to assure there was not an employment contract and

rejected McDonald's other claims. Justice Thomas, also dissenting, agreed with Justice Cardine, noting that he could see no difference between the effect of seeing the handbook as creating a contract and finding it to be a binding promise under the doctrine of promissory estoppel.

We reaffirm our earlier decision reversing summary judgment and remanding this case for further proceedings. We hold that a question of material fact exists concerning whether the employee handbook and Mobil's course of dealing with appellant modified the terms of appellant's at-will employment.

## DISCUSSION

The construction and interpretation of the employment contract is the main issue to be resolved by this court. The standard of review for that type determination has been stated in this way:

> Normally, the construction and interpretation of a contract is for the court as a matter of law. If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact.

*Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 706 (Wyo.1985) (citations omitted).

The entry of summary judgment requires that there be no genuine issue of material fact. *Miller v. Rissler & McMurry Co.,* 794 P.2d 91, 92 (Wyo.1990). Affirmance of summary judgment in this case requires the absence of any genuine issue of material fact concerning whether appellant's at-will employment was modified by the handbook's provisions and appellee's course of dealing with the appellant.

We find a genuine issue of material fact presented over whether the parties altered their contractual relationship. *See Alexander v. Phillips Oil Company,* 707 P.2d 1385, 1386 (Wyo.1985). Mobil claims it effectively disclaimed any employment relationship other than at-will. McDonald argues Mobil objectively manifested its intent

to modify the initial at-will contract with the employment manual and by its course of dealing. We examine both the effect of the disclaimer and Mobil's manifestation of intent.

*Mobil's Attempted Disclaimers of Contract*

The Federal District Court of Wyoming explored the issue of effective contract disclaimers in *Jimenez v. Colorado Interstate Gas Company,* 690 F.Supp. 977 (D.Wyo.1988). The plaintiff's employer had adopted standard operating procedures relating to cause for termination. The employer had inserted a disclaimer in these procedures to the effect that they did not constitute terms of a contract. The court stated that for a disclaimer to be effective it must be conspicuous and whether it was conspicuous was a matter of law. *Jiminez,* at 980. Where the disclaimer was not set off in any way, was placed under a general subheading, was not capitalized, and contained the same type size as another provision on the same page, it was not conspicuous. *Id.*

We adopt the rule in *Jiminez* that disclaimers must be conspicuous to be effective against employees and that conspicuousness is a matter of law. The trial court erred in its statement that there was no requirement that the disclaimers be conspicuous. We examine the disclaimers in this case to see whether they were sufficiently conspicuous to be binding on appellant.

The application form which Craig McDonald signed on July 20, 1987, contained the following disclaimer:

### READ CAREFULLY BEFORE SIGNING

I agree that any offer of employment, and acceptance thereof, does not constitute a binding contract of any length, and that such employment is terminable at the will of either party, subject to appropriate state and/or federal laws.

The MCPI Employee Handbook which he received contained the following disclaimer,

located on its first page, which we reproduce in full to show the context in which the disclaimer was made:

### WELCOME

Mobil Coal Producing Inc., Caballo Rojo Mine, is proud to welcome you as an employee. We believe you will find safety, opportunity and satisfaction while making your contribution to Mobil's growth as a major supplier of coal.

This handbook is intended to be used as a guide for our nonexempt mine technicians and salaried support personnel, to help you understand and explain to you Mobil's policies and procedures. It is not a comprehensive policies and procedures manual, nor an employment contract. More detailed policies and procedures are maintained by the Employee Relations supervisor and your supervisor. While we intend to continue policies, benefits and rules contained in this handbook, changes or improvements may be made from time to time by the company. If you have any questions, please feel free to discuss them with your supervisor, a member of our Employee Relations staff, and/or any member of Caballo Rojo's Management. We urge you to read your handbook carefully and keep it in a safe and readily available place for future reference. Sections will be revised as conditions affecting your employment or benefits change.

Sincerely,

/s/

R.J. Kovacich
Mine Manager
Caballo Rojo Mine

The circumstances surrounding this disclaimer are nearly identical to those of the *Jiminez* case. The disclaimer in this case was not set off by a border or larger print, was not capitalized, and was contained in a general welcoming section of the handbook.

Additionally, the disclaimer was unclear as to its effect on the employment relationship. For persons untutored in contract law, such clarity is essential, as stated in this apt language from a New Jersey Supreme Court opinion:

It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises. What is sought here is basic honesty: if the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement *that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.*

*Woolley v. Hoffman–La Roche, Inc.,* 99 N.J. 284, 309, 491 A.2d 1257, 1271 (1985), *mod.* 101 N.J. 10, 499 A.2d 515 (1985). No explanation was given in the disclaimer that Mobil did not consider itself bound by the terms of the handbook. Instead, McDonald would have been led to draw inferences from the handbook language: that it was intended to be a guide, and that Mobil intended to continue the policies, benefits and rules contained in the handbook. The same paragraph which disclaimed a contract also informed Mr. McDonald that he could discuss "any questions" he might have with his supervisor, employee relations staff and management and urged him to read the handbook carefully and to keep it in a safe and readily available place.

The trial court erred in finding that the disclaimer was conspicuous. We hold that the attempted disclaimers in the employee handbook and in the employment application were insufficiently conspicuous to be binding on McDonald.

*Mobil's Assent to Contract*

■ In our earlier opinion, this court stated:

Following *Parks,* Mobil revised its handbook. The most significant revision was the addition of a statement that the handbook was not an employment contract. A contract exists when there is a meeting of the minds. Mobil's express disclaimer demonstrates that it had no intention to form a contract.

*McDonald I,* 789 P.2d at 869 (citation omitted).

The above quotation could be interpreted as importing an unduly subjective element into contract analysis. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 630 n. 6 (Minn.1983). However, we did not mean to say that a contract could not be formed where one party somehow lacked "subjective intent" but nevertheless proceeded as if there were a contract.

Under the "objective theory" of contract formation, contractual obligation is imposed not on the basis of the subjective intent of the parties, but rather upon the outward manifestations of a party's assent sufficient to create reasonable reliance by the other party. *See* R. Scott and D. Leslie, *Contract Law and Theory* 194–95 (1988). That Mobil did not subjectively "intend" that a contract be formed is irrelevant, provided that Mobil made sufficient intentional, objective manifestations of contractual assent to create reasonable reliance by McDonald.

The Restatement (Second) of Contracts § 19 (1979) puts the matter this way:

(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.

(2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.

(3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause.

The Restatement (Second) of Contracts § 21 (1979) further explains:

Neither real nor apparent intention that a promise be legally binding is essential to the formation of a contract, but a manifestation of intention that a promise shall not affect legal relations may prevent the formation of a contract.

The views expressed in the above Restatements are sound and are herewith adopted in Wyoming. Mobil's subjective "intent" to contract is irrelevant, if Mobil's intentional, objective manifestations to McDonald indicated assent to a contractual relationship.

■ We must determine whether there is a genuine issue of material fact concerning Mobil's objective manifestations of assent to contract. The disclaimers figure in this analysis, as do the remainder of the handbook provisions and Mobil's course of dealing with McDonald.

The handbook informed McDonald that "individual consideration on employee-supervisor matters provides the best method for satisfying the employees' and the Company's needs" which could not be improved on by union representation. Mobil stated that it planned to provide, *inter alia,* "free and open communications" and stated that "on those rare occasions when differences cannot be resolved, we have a Fair Treatment Procedure that affords an employee the opportunity to be heard, without fear of reprisal." Union representation, the handbook stated, is unnecessary for employees to enjoy job security or consistent treatment.

The manual stated that Mobil recognized a "fundamental obligation" to its employees to "give helpful consideration when an employee makes a mistake or has a personal problem with which we are asked to help." The handbook outlined a procedure for presenting a problem or complaint which an employee might have. The manual also set forth a progressive discipline schedule for cases in which the employee broke the company rules or failed to meet a

reasonable standard of conduct and work performance. This five-step schedule could be disregarded by the company at its discretion.

The "welcoming" section, quoted above, stated that Mobil intended to continue policies, benefits and rules contained in the handbook and that changes or improvements could be made from time to time by the company. The inference favorable to McDonald is that Mobil would follow the rules unless changed, and that since they had not been changed, Mobil was bound by them.

When McDonald went to his supervisor over the rumors that he had heard, he was told that he should "just do his job and not worry about what had been said." McDonald alleges that Mobil's course of conduct led him to believe that Mobil would follow the handbook procedures concerning the complaint of his co-employee.

Examining the handbook provisions cited above and Mobil's course of dealing with McDonald on the rumor of accusation and his termination, we find ambiguity as to whether Mobil manifested intent to modify the at-will employment to an employment which could be terminated only for cause. Mobil made numerous statements which could be construed as promises to McDonald concerning communication with him and Mobil's disciplinary procedures. Mobil's handbook stated that individual consideration and open communication would be an effective substitute for unionization. All of these manifestations could suggest to a reasonable person that Mobil intended to make legally-binding promises. "If the meaning of a contract is ambiguous, or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact." *Parks*, 704 P.2d at 706; and *see also Leithead v. American Colloid Company*, 721 P.2d 1059, 1068 (Wyo.1986) (Thomas, J., concurring and dissenting). There, Justice Thomas, on remand, would have extended "the scope of the trial to the factual question of the effect of language in these employee handbooks which [he

perceived] not to be sufficiently apparent to justify a conclusion that this was a contract of employment as a matter of law." Justice Thomas saw the effect of the employee handbooks on at-will employment as either creating a question of fact or ambiguity such as to require a determination of the parties' intention from evidence other than the contract itself.

The meaning and effect of this employment contract, a mixed question of law and fact, remains unresolved. Therefore, we must reverse summary judgment on the contract issue. The case is remanded to the trial court for determination of whether the employee handbook and Mobil's course of dealing with McDonald modified the employment relationship from one terminable at will to one terminable only for cause.

MACY, Justice, specially concurring.

I specially concur. In *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990), we stated that genuine issues of material fact existed as to the effect, if any, the representations made by Mobil in its handbook had upon an otherwise at-will employment relationship. The Court went on to state in *McDonald* that those issues were (1) whether Mobil should have expected McDonald's reliance upon the procedures outlined in the handbook, (2) whether McDonald's reliance was reasonable, and (3) whether Mobil's termination procedures should have been enforced to avoid injustice.

The majority opinion in this case holds that there was an ambiguity in the employment handbook which presented a material question of fact as to whether Mobil intended to make legally binding promises concerning Mobil's employment termination procedures. Even if the employment handbook was ambiguous, Mobil's course of conduct clearly demonstrated that Mobil intended to make legally binding promises concerning Mobil's employment termination procedures and that Mobil certainly led McDonald to rely upon the termination procedures outlined in the handbook.

It appears that the only question which should be resolved on remand is whether

Mobil's termination procedures should have been enforced to avoid an injustice; i.e., whether Mobil should have been estopped from firing McDonald without cause. *See McDonald*, 789 P.2d 866.

THOMAS, Justice, dissenting.

I persist in my vote to affirm the trial court in this case. Like Justice Cardine, in whose dissent I join, I am at a loss to understand what more Mobil Coal Producing, Inc. could do to make it clear to an employee that he was entering into an employment-at-will arrangement. I am satisfied that this was an employment-at-will. That relationship was not modified by the handbook. I am not persuaded that there is any more solid majority support for reversal than there was with respect to the first opinion.

I see no need to reiterate what I said in my dissenting opinion in *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 872 (Wyo.1990), Thomas, J., dissenting. I simply emphasize that, in all respects, the dissenting opinion is still sound so far as it treats with the issue relating to the contract of employment.

In this new effort in which the majority reverses the summary judgment, reliance is placed upon *Alexander v. Phillips Oil Company*, 707 P.2d 1385 (Wyo.1985), and substantial reliance is placed upon *Jimenez v. Colorado Interstate Gas Company*, 690 F.Supp. 977 (D.Wyo.1988). In invoking these authorities, the majority simply fails to recognize the actual employment-at-will arrangement that was entered into between McDonald and Mobil Coal Producing, Inc. That arrangement is captured by, quotation on page three of the majority slip opinion. From that point on, it is ignored.

I submit, however, that the fact of that specific employment-at-will arrangement serves to distinguish this case from both *Alexander* and *Jimenez*. There are other distinguishing facts. The employee handbook, in this instance, was not adopted and issued after the time that McDonald was employed. It is difficult for me to understand how it could amend, or could in some manner have changed, the clear employ-ment-at-will that was documented. In *Jimenez*, there was no separate document articulating an employment-at-will, and the court was dealing only with the factors of employment plus the existence of a handbook. While it might be appropriate to emphasize in an employee's handbook, that was issued without a separate document articulating the employment arrangement, the caveat explaining that the handbook is not an employment contract, that requirement is far less imperative when one recognizes that the handbook was generally available to employees of Mobil Coal Producing, Inc. After the handbook already had been published and issued, McDonald signed a document that provided that the "employment is terminable at will." Under these circumstances, the subsequent delivery of the handbook simply did not make any difference.

In my opinion, this case strikes the death knell for employment-at-will in Wyoming. It says, in effect, that even though there is a clear statement by the employee that the relationship with the employer is an employment-at-will, after the employment commences, the employer cannot engage in any dialogue with the employee about the conditions and circumstances of the employment. If any such dialogue occurs, it will be considered to have amended the arrangement in such a way that the question of employment must be submitted to a jury. I lack the imagination to visualize any situation in which dialogue about the conditions and circumstances of the employment would not occur and, consequently, it is hereafter impossible to have an employment-at-will in Wyoming.

The summary judgment entered by the trial court in this case should be affirmed.

CARDINE, Justice, dissenting, with whom THOMAS, J., joins.

I continue my dissent to the opinion of the court and this opinion upon rehearing for the reasons previously stated. *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 871 (Wyo.1990) (Cardine, C.J., dissenting) (*McDonald I*). This opinion after rehearing merely informs Mobil of addi-

tional requirements for effective disclaimer. If Mobil should in the future satisfy these requirements, can it assume that this court will give effect to its disclaimer—or should Mobil eliminate its employee handbook? Perhaps the answer will only come with more litigation.

In *McDonald I*, the court reversed summary judgment on the basis of promissory estoppel. Despite the disclaimer in the handbook, the court said McDonald could recover if he could demonstrate that it was reasonable to rely upon the promises contained in the handbook and if enforcement of the promises was the only way to avoid an injustice. 789 P.2d at 870. The court held that no contract was formed because there was no meeting of the minds in forming a contract. *Id.* at 869, citing *Anderson Excavating and Wrecking Co. v. Certified Welding Corp.*, 769 P.2d 887 (Wyo.1988). Now, in this opinion upon rehearing, the court holds that if it was reasonable to rely upon promises in the handbook, then a contract was formed. This opinion states a contract is formed by "outward manifestations of a party's assent sufficient to create reasonable reliance by the other party." The language is similar to the definition of a promise in *McDonald I*, wherein the court said a promise is

> "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." 789 P.2d at 870, quoting Restatement, Second, Contracts § 2 (1981).

A promise is not a contract. But this court now says the making of a promise alone reasonably relied upon by another creates an enforceable contract.

It is said that whether a contract was entered into depends upon the intention of the parties. 17A Am.Jur.2d Contracts § 27 (1991). For a valid contract to exist, a meeting of the minds is necessary concerning the terms of the agreement, the parties must have intended to contract, and the contract must be supported by consideration. *Anderson Excavating*, 769 P.2d at 889; *United States Through Farmers Home Administration v. Redland*, 695

P.2d 1031, 1036 (Wyo.1985); *Miller v. Miller*, 664 P.2d 39, 40 (Wyo.1983). It is clear from the disclaimer that Mobil never intended to make a contract. There was never a meeting of the minds nor was there a valid consideration. There was no contract. That is why this court in *McDonald I* rested its decision to reverse upon the doctrine of promissory estoppel. I would affirm the decision of the trial court.