**Myron DURTSCHE, Jr.,**
**Plaintiff–Appellee,**

v.

**AMERICAN COLLOID COMPANY,**
**Defendant–Appellant.**

**No. 90–8096.**

United States Court of Appeals,
Tenth Circuit.

March 11, 1992.

Rehearing Denied April 3, 1992.

William R. Fix, Jackson, Wyo., for plaintiff-appellee.

Roger E. Shumate of Murane & Bostwick, Caspar, Wyo. (Robert E. Arroyo of Keck, Mahin & Cate, Chicago, Ill., with him on the brief), for defendant-appellant.

Before MOORE and TACHA, Circuit Judges, and KANE, Senior District Judge.*

KANE, Senior District Judge.

This is an appeal from a judgment in favor of the appellee, Myron Durtsche, Jr., in a wrongful termination action. The appellant, the American Colloid Company, argues that the trial court erred in (1) denying its motion for summary judgment and in sua sponte granting summary judgment in favor of Durtsche on the issue of Durtsche's status as an at-will employee, (2) allowing evidence of future damages, and (3) permitting the introduction of irrelevant and prejudicial evidence relating to groundwater contamination and the company's amendment of its employee handbook. We affirm.

* Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colora-

## I. *Facts.*

American Colloid is an international mining concern that operates a bentonite mine in Lovell, Wyoming. Durtsche was employed as an exploration manager with the company for approximately twenty-three years. On June 2, 1987, American Colloid terminated Durtsche's employment, citing a downturn in the local economy. Durtsche then brought a diversity action in federal court, alleging wrongful termination, breach of the covenant of good faith and fair dealing, promissory estoppel and negligence.

American Colloid moved for summary judgment on October 27, 1989, claiming that Durtsche was an at-will employee who could be terminated without just cause and that, in any event, he was terminated for economic reasons. The company argued that its employee handbook did not alter Wyoming's common-law rule of employment at will because it had amended certain handbook provisions before Durtsche's termination. In these amendments, the company deleted the term "permanent employee" and replaced it with the term "regular employee," defining the latter to be an employee at will. The court denied American Colloid's motion, granting instead partial summary judgment in favor of Durtsche and finding that he could be discharged only for cause because the amendments were ineffective.

The case then went to trial on whether American Colloid had just cause to terminate Durtsche. The jury returned a verdict in favor of Durtsche for $284,000. The company moved to alter or amend this judgment and for remittitur, which the court denied. American Colloid then initiated this appeal.

## II. *Merits.*

A. *Durtsche's Status as a Permanent Employee.*

■ American Colloid raises several issues concerning the trial court's summary

do, sitting by designation.

judgment ruling that Durtsche was not an at-will employee. In reviewing the trial court's grant or denial of summary judgment, we apply the same standard as the trial court. *Hecla Mining Co. v. United States*, 909 F.2d 1371, 1373–74 (10th Cir. 1990). Thus, summary judgment is proper if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The company's central argument is that the court erred as a matter of law in concluding that its employee handbook, as amended, created an exception to the at-will rule.[1] We disagree.

This is not the first time this issue has been before the courts. Several years before this case, American Colloid was sued by another employee for wrongful termination. In *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986), the Wyoming Supreme Court reviewed language in the same employee handbook which provided that an employee who successfully completed a probationary period would become a "permanent employee." The court concluded that this and other language in the handbook created a contract altering the at-will relationship and that American Colloid permanent employees could be fired only for cause. *Id.* at 1062–63.

As a consequence of *Leithead*, American Colloid amended the employee handbook in 1984, several years before Durtsche was terminated. The primary change was deletion of the reference to a "permanent employee" and substitution of the term, "regular employee." The definition of this new term in the glossary of the handbook provided that designation as a regular employee "does not imply guaranteed permanent employment. The Company reserves the right to terminate at-will." (R.Doc. 15, Ex. to Washow Dep.) The company distributed these changes to employees with a cover letter, which stated in part:

Attached are new pages to be inserted into your Employee Information Handbook.

In addition to the changes in the medical coverage, there are minor changes in some of the other information. We also corrected some typographical mistakes that were in the earlier edition.

Please read through this information carefully and put it in your handbook. You should discard the old pages that are being updated.

(*Id.*)

In denying American Colloid's motion for summary judgment and granting partial summary judgment in favor of Durtsche, the trial court concluded, despite conflicting evidence that Durtsche had actually received a copy of the handbook changes, the company did not provide effective, reasonable notice of the changes to employees. Relying on *Jimenez v. Colorado Interstate Gas Co.*, 690 F.Supp. 977, 980 (D.Wyo. 1988), the trial court held that any changes to the handbook "must be conspicuous," and that the company had, if anything, "attempted to minimize their - import." (R.Doc. 31 at 9.) In addition, the trial court held general contract principles do not permit an employer to change the terms of its handbook without acceptance by and additional consideration to the employee. We agree with the trial court's first conclusion but not its second.

In *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990) (*McDonald I*), *modified on reh'g*, 820 P.2d 986 (Wyo. 1991) (*McDonald II*), an employee sued his former employer for wrongful termination, basing his claim on language contained in an employee handbook allegedly requiring the company to discharge employees only for cause. Five years earlier, in *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 706–07 (Wyo.1985), the Wyoming Supreme Court construed the same handbook as a contract modifying the traditional at-will relationship. *See also McDonald I*, 789 P.2d at 869. After *Parks*, Mobil reacted by revising the handbook to provide

---

1. There are suggestions in American Colloid's brief on appeal that it believes the district court erred in sua sponte granting summary judgment in favor of Durtsche when he had not so moved. This was not error. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgment sua sponte." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

that it was not to be construed as an employment contract. *Id.* Based on this revision, the trial court held that the handbook did not create a contract between the employee and his employer and that the employee could be terminated without cause.

In *McDonald I*, the Wyoming Supreme Court agreed with the trial court that "Mobil's express disclaimer demonstrates that it had no intention to form a contract" and that the handbook was not part of the employment contract. *Id.* A different plurality found, however, that the employer could be held liable under a promissory estoppel theory, based on other promises and procedures contained in the handbook. *Id.* at 870–71; *see also McDonald II,* 820 P.2d at 987. It reversed the grant of summary judgment in favor of Mobil and remanded for further proceedings. Two judges dissented.

On rehearing, the Wyoming Supreme Court modified its decision in *McDonald II.* Adopting the test of *Jimenez v. Colorado Interstate Gas Co.,* the court held that Mobil's purported alteration of its handbook was ineffective because the disclaimer was not conspicuous. 820 P.2d at 988. It noted that the disclaimer "was not set off by a border or larger print, was not capitalized, and was contained in a general welcoming section of the handbook." *Id.* at 989. The court criticized the disclaimer as failing to provide "persons untutored in contract law" with an explanation of its effect on the employment relationship, and

for its ambiguity in indicating whether other policies in the handbook would be continued. *Id.* Since the attempted disclaimer was ineffective, the court remanded the case to the trial court for further proceedings to determine whether other handbook language and Mobil's course of dealing with employees evinced an intent to modify the employment-at-will relationship.

█ Like the employer in *McDonald II,* the undisputed facts in this case support the trial court's finding that American Colloid was not forthcoming in disclosing the fundamental nature of the changes it was making to the handbook. In the cover letter attached to the amendments, there is no mention of the central revision of the handbook to provide for employment at will. The letter references only the changes to medical coverage, describing the others as "minor." In addition, the at-will language was contained in a definition appearing in the glossary, and there was nothing further to draw the reader's attention to the new provision, which was among six pages of other changes.

Whether a contract disclaimer in a handbook is conspicuous is a matter of law. *McDonald II,* 820 P.2d at 988; *Jimenez,* 690 F.Supp. at 980. Even assuming Durtsche had knowledge that there had been amendments to the handbook,[2] we agree with the trial court's conclusion that the amendments were ineffective to alter the terms of the handbook providing for termination for cause. The disclaimer was

---

**2.** American Colloid argues that the district court erred in considering Durtsche's affidavit on summary judgment in which he stated that he had no knowledge of the amendments until after this lawsuit was filed. The company contends that this statement directly contradicts Durtsche's earlier deposition testimony in a related case that he had seen the amendments, and it is therefore inadmissible under *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986). That case holds, however, that an affidavit submitted on a summary judgment motion which conflicts with the affiant's earlier sworn testimony is not automatically disregarded. *Id.* at 1237. The court first must determine whether the conflicting affidavit is simply an attempt to create a "sham fact issue." *Id.*

Here, we agree with the district court's assessment that Durtsche's affidavit and his prior deposition testimony did not indicate a clear, irreconcilable conflict and was not an attempt to create a sham fact issue. *See City of Chanute, Kan. v. Williams Natural Gas Co.,* 743 F.Supp. 1437, 1448 (D.Kan.1990) (distinguishing between discrepancies which create a transparent sham and those going to the weight of evidence and the affiant's credibility), *aff'd,* 955 F.2d 641 (10th Cir.1992). Moreover, whether Durtsche had actual knowledge of the fact of the amendments was not material to the trial court's ruling on summary judgment. There was no indication in either the affidavit or the deposition testimony that Durtsche understood the purpose of the amendments. As we have noted, the amendments did not otherwise give employees reasonable notice of the effect of the changes. Thus, any error by the district court in considering the affidavit was harmless.

buried in a glossary definition, and there was no effort to highlight the fact or the effect of the disclaimer. Under *Jimenez v. Colorado Interstate Gas Co.* and *McDonald II,* we conclude that the trial court did not err in finding the operative changes to the handbook were inconspicuous and ineffective as a matter of law.[3]

■ We do not agree with the trial court's conclusion, however, that Wyoming law does not permit an employer unilaterally to amend a handbook to reinstate the employment-at-will rule. The trial court held that Wyoming courts would apply traditional contract principles to prohibit an employer from unilaterally amending an employee handbook without the employee's express acceptance and additional consideration. In *McDonald I* and *McDonald II,* however, the Wyoming Supreme Court implicitly recognized that an employer *can* amend the terms of a handbook which abrogate the at-will rule. Had this not been the case, it would have been unnecessary for the Court to have considered whether the disclaimer was conspicuous. Instead, *McDonald II* holds that an employer's attempt to change the terms of its handbook or to disclaim the effect of the contract created thereby must be conspicuous and must clearly explain to the employee the nature of the change. Thus, we affirm the trial court's ruling on summary judgment only on the basis that the changes to the handbook were not conspicuous.

### B. *Evidence of Future Damages.*

American Colloid next argues the trial court erred in permitting the introduction of evidence of future damages and in instructing the jury that it could award unlimited future damages. The company asserts that the evidence and instructions were improper because Durtsche admitted that he had a job offer in the bentonite industry after he was terminated. American Colloid objected to both the testimony of Dr. Jerome Sherman, an economist who testified as to future damages, and to the instructions relating to future damages. Thus, we must determine first, whether Wyoming law would permit an award of future damages and second, whether the trial court erred in permitting the expert testimony and in instructing the jury on the issue.

■ A trial court's evidentiary rulings are reviewed for an abuse of discretion, *Graham ex rel. Graham v. Wyeth Laboratories,* 906 F.2d 1399, 1401 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990), as are its decisions on instructing the jury, *see Transpower Constructors v. Grand River Dam Auth.,* 905 F.2d 1413, 1417 (10th Cir.1990). When this issue arises in the context of a motion for remittitur, the trial judge's refusal to grant remittitur or new trial on the ground of excessive damages is likewise tested for an abuse of discretion. *Royal College Shop, Inc. v. Northern Ins. Co.,* 895 F.2d 670, 677 (10th Cir.1990).

■ As to the first question, American Colloid suggests that all evidence of future damages in this case should have been excluded because it was based on pure speculation and because Durtsche had a job offer with another company. The company relies on *Panhandle Eastern Pipe Line Co. v. Smith,* 637 P.2d 1020 (Wyo.1981), for the proposition that future damages were improper. That case actually permits an award of future damages based on "the amount of compensation agreed upon for the remainder of the period involved less the amount the employee earned or with reasonable diligence could have earned from other employment." *Id.* at 1025. Like the employee in *Panhandle,* Durtsche's contract with his employer was for an indefinite term. Thus, future damages are a proper element to be awarded in a wrongful termination case under Wyoming law.

---

**3.** We note that two other district courts have also concluded that the changes to American Colloid's handbook were not conspicuous under Wyoming law. *See Mangus v. American Colloid Co.,* No. 90–CV–1020–J, slip op. at 4–6, 1991 WL 330939 (D.Wyo. Apr. 5, 1991) (order on defendant's motion for summary judgment); *Watson v. American Colloid Co.,* No. 90–5048 (D.S.D. June 18, 1991) (transcript of court's ruling on motions, indicating in dicta that changes were not conspicuous).

■ American Colloid argues, however, that evidence to support such an award was speculative. Durtsche's expert, Dr. Sherman, testified that, based on his past earnings and present inability to find a job with comparable pay in the industry, Durtsche suffered future damages exceeding $400,000. Although the company claims that Durtsche admitted he had obtained another job in the industry, the testimony at trial does not support this assertion. Durtsche testified that he had begun negotiations with another company but had no firm offer of a job. American Colloid failed to elicit on cross-examination the amount that the new position would pay, despite its burden on the mitigation issue. *See id.* at 1027. Nevertheless, it was clear that the pay would not be comparable to what Durtsche was making at American Colloid before his termination. Therefore, Dr. Sherman's estimate of Durtsche's future damages was not speculative for failing to take into account Durtsche's potential earnings at a new position, since there was no certainty at trial that the position would be offered and American Colloid failed to elicit information on Durtsche's expected compensation. The trial court did not err in permitting evidence of future damages, and its denial of American Colloid's motion for remittitur was not an abuse of discretion.

### C. *Evidence of Groundwater Contamination.*

■ American Colloid further contends that the trial court erred in permitting testimony relating to allegations of groundwater contamination at a company facility. The company suggests that this evidence lacked relevance and prejudiced the jury. Durtsche responds that this evidence was not irrelevant because it was used to show the company's unjustified motive in firing him. Under Fed.R.Evid. 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The trial court is given broad discretion in the Rule 403 balancing analysis. *United States v. Harrison,* 942 F.2d 751, 759 (10th Cir.

1991); *United States v. Jenkins,* 904 F.2d 549, 555 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990).

Durtsche testified that five months before he was terminated he told Lawrence Washow, his superior and the person who fired him, that he believed there had been groundwater contamination several years earlier at a subsidiary facility adjacent to the Lovell plant. Durtsche contended that this incident irritated Washow and led him to recommend Durtsche be let go. The company asserts that Durtsche's testimony was wholly inflammatory, in that it led the jury to focus on American Colloid as a "bad company" because of the contamination and subsequent testimony regarding the death of a herd of cattle.

The primary issue at trial was whether American Colloid had just cause to terminate Durtsche. Evidence that management was unhappy that Durtsche had reported a potential environmental problem was central to his ability to rebut the company's contention that it fired him for economic reasons. Our review of the record indicates that there was only brief reference to the contamination and the death of the herd of cattle. For evidence of the contamination to have been unduly prejudicial, the jury would have had to place great focus on these short passages. The context of these statements indicates this was unlikely. Therefore, we conclude that the trial court's decision to admit the testimony concerning groundwater contamination was not an abuse of discretion under Fed.R.Evid. 403.

### D. *Evidence of Amendments to Employee Handbook.*

■ American Colloid's final contention on appeal is that the trial court erred in permitting evidence of its attempt to amend the provisions of its employee handbook. The company argues that, once the court ruled against it on the motion for summary judgment by holding that the company could not unilaterally amend its handbook, this evidence was irrelevant. However, relevant evidence "means evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The trial court's ruling on the relevancy of evidence is reviewed for an abuse of discretion. *See United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988).

Here, Durtsche was permitted to introduce evidence of the handbook changes to show that the company would be more likely to fire him without cause if it believed it properly had amended its policy to permit at-will terminations. This is a justifiable inference from this evidence and relevant to Durtsche's contention that he was not dismissed for economic reasons. Therefore, the trial court did not abuse its discretion in admitting it.

The trial court's rulings are AFFIRMED.