**Paul T. HANNA, Appellant (Plaintiff),**

v.

**CLOUD 9, INC., a Wyoming Corporation, Appellee (Defendant).**

No. 94–41.

Supreme Court of Wyoming.

Feb. 10, 1995.

bar a remote cause, not a proximate cause, of appellant's injuries?

Douglas G. Madison and Randall B. Reed of Dray, Madison & Thomson, P.C., Cheyenne, for appellant.

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

A patron of Appellee's bar filed a complaint for negligence against the bar to recover for injuries he sustained in a fight with another patron. That injured patron now appeals the trial court's entry of summary judgment against him, following its determination that no genuine issues of material fact exist and, under the undisputed facts, Appellee owed no duty of care to the patron.

We affirm.

## ISSUES

Appellant Paul Hanna presents the following issues for our review:

I. Did [bartender] Susan Riggs have reason to believe that [patron] Paul Hanna was in imminent danger and have an opportunity to intervene prior to the second assault and battery in the bar?

II. What duty did Cloud Nine, Inc. owe [patron] Paul Hanna once the second assault and battery commenced?

Appellee Cloud 9, Inc. rephrased the issues as:

I. Did the district court properly grant summary judgment to the bar, and against its intoxicated patron, for injuries that patron sustained in a fight with another bar patron.

II. Did the district court properly conclude that the bar did not owe a duty of protection to appellant under all the circumstances?

III. Even if the bar owed a legal duty of care to appellant, and even if the bar breached that duty of care, was the

## FACTS

The Cloud 9 Bar, located in the Cheyenne airport, is operated independently of but adjoins the Cloud 9 Restaurant. Appellant Paul Hanna was an employee of the Cloud 9 Restaurant. On the evening of Sunday, September 27, 1992, Hanna, who was off duty and had spent the afternoon watching a football game and drinking a six pack of beer, went to the Cloud 9 Bar where he drank two more beers and visited with friends.

Between approximately 8:00 and 8:30 that evening, Hanna left the bar and walked into the restaurant coffee shop to visit with fellow employees. A short time later, Hanna left the coffee shop and entered the kitchen of the restaurant hoping to make plans for the evening with the kitchen employees. Once inside the kitchen, Hanna encountered the manager of the restaurant, Louis Kutsulis (Louis). When Louis saw Hanna, Louis immediately, allegedly without provocation, began yelling vulgarities at him which eventually led to a shoving match between the two.

While Hanna and Louis were yelling at and shoving each other, an employee who had been working in the kitchen went into the Cloud 9 Bar and alerted Louis' son, Phillip Kutsulis (Phillip), that Hanna and Louis were fighting in the kitchen. Phillip entered the kitchen, and after more shouting and shoving between the three, Phillip and Louis forced Hanna out the back door of the kitchen and threw him off the loading dock.

Hanna proceeded toward home, which was within walking distance, and then realized he had left his coat and keys in the bar. Hanna returned to the bar and entered through the back door. From here the accounts of what happened diverge. What is certain is that Hanna met Phillip in the bar and the two fought. During that fight, Phillip kicked Hanna in the arm, breaking it, and also inflicted other less serious injuries upon him.

On December 8, 1992, Hanna filed a complaint in district court: against Phillip Kutsulis and Louis Kutsulis for assault and battery

and intentional infliction of emotional distress; against Louis Kutsulis for negligent employment and retention; and against Appellee Cloud 9, Inc., for negligence (premises liability) and negligent selection of lessee. Hanna obtained a $75,000 judgment against Louis and Phillip Kutsulis, jointly and severally; however, the trial court granted Appellee's summary judgment motion, finding no genuine issues of material fact existed and Appellee, as a matter of law, owed Hanna no duty of care. Hanna has abandoned, on appeal, his claims of liability premised upon negligent selection of lessee, raising only those issues relating to premises liability.

## DISCUSSION

### 1. *Standard of Review*

■ This Court will affirm an entry of summary judgment only if no genuine issues of material fact exist and the prevailing party was entitled to judgment as a matter of law. Wyo.R.Civ.P. 56(c). We review a summary judgment in the same light as the district court, examining the record from the vantage point most favorable to the party opposing the motion and affording that party the benefit of all favorable inferences which may fairly be drawn from the record. *Mountain Cement Co. v. Johnson*, 884 P.2d 30, 32 (Wyo. 1994).

### 2. *Premises Liability*

This Court most recently addressed the question of tavern keeper liability in *White v. HA, Inc.*, 782 P.2d 1125 (Wyo.1989). In *White*, we held that a tavern keeper owes a duty to his invitee to exercise reasonable care in protecting the invitee from the physical assault of another invitee if the injured invitee proves:

- a disturbance which did attract or should have attracted the tavern keeper's attention;
- the lapse of a reasonable amount of time between the attracting disturbance and the subsequent tortious act on the injured invitee by the other invitee, within which time period the tavern keeper had the opportunity to avert the impending danger or subsequent tortious act; and

- a relationship between the attracting disturbance and the subsequent tortious act.

*White*, 782 P.2d at 1129.

We have said the disturbance must be more than a battle of violent words; it must be "action, threat of action, or some type of demonstration." *White*, 782 P.2d at 1129 (quoting *Fisher v. Robbins*, 319 P.2d 116, 120 (Wyo.1957)). In *Mayflower Restaurant Co. v. Griego*, 741 P.2d 1106 (Wyo.1987), for example, we found that a threat to assault the injured patron, accompanied by shirt-grabbing, constituted the requisite attracting disturbance.

Hanna offers three incidents to qualify for the requisite attracting disturbance to give rise to the tavern keeper's duty:

- A July 12, 1992, incident involving Phillip and bar patrons, which incident did not involve Hanna, as he was not present, or Louis, as he was not present;
- The September 27, 1992, "kitchen incident" which occurred about fifteen minutes before the tortious act in question (Phillip's kick to Hanna's arm) and which involved, at first, Hanna and Louis, and, later, Hanna, Louis, and Phillip; or
- The September 27, 1992, "bar incident" which occurred anywhere between moments to several minutes before the tortious act in question, depending upon which "eye witness" version is accepted.

■ The district court correctly made short-shrift of both the July incident and the "kitchen incident." The July incident fails as a matter of law to qualify as the attracting disturbance because it lacks relationship with the September 27 tortious act. It lacks relationship because: neither Louis nor Hanna were present on July 12, the July 12 incident's subject matter differed from the September 27 incident's subject matter, and the two and one half month interval destroyed the imminence element inherent in the relationship between the attracting disturbance and the subsequent intentional tortious act.

■ The "kitchen incident" fails to qualify as a matter of law because it did not occur

in the bar. The tavern keeper's duty to exercise care extends only to the bar's physical boundaries. *White*, 782 P.2d at 1132. We hold that the attracting disturbance must occur on the tavern keeper's premises.

The "kitchen incident" also fails to qualify as a matter of law because the movant, Cloud 9, Inc., showed with its submitted summary judgment material that the bartender, Riggs, did not know about the "kitchen incident." In this regard, Riggs' deposition testimony was:

Q. What personal knowledge did you have, if any, regarding trouble that Phillip Kutsulis may have been in whether he caused it or was just involved in it in the Cloud 9 Bar?

A. None. Not before that little contra— you know, that little fight that came through the doorway, not before at all that I know of.

Hanna does not point us to any competent evidence in his submitted opposition material to contradict Riggs' testimony that she did not know about the "kitchen incident" when it was occurring. Considering, in a light most favorable to Hanna, the depositions of two witnesses, Wayne Lackey, a restaurant employee, and Gus Anastopoulos, an off-duty bar employee, the most Riggs knew from witnessing Wayne Lackey enter the bar to inform Phillip of Louis and Hanna's fight in the kitchen was just that, i.e., that Wayne Lackey told Phillip there was a fight and that Phillip left the bar. Riggs did not know Phillip accosted Hanna in the kitchen or that they engaged in a word battle there. It is not a reasonable inference from that quantum of information that Riggs knew the "kitchen incident" involved Phillip and Hanna and was of such a nature as to qualify for the attracting disturbance.

That leaves, as our remaining determination, the question whether the "bar incident" qualifies as the attracting disturbance, following which disturbance a reasonable amount of time elapsed in which the tavern keeper had the opportunity to avert the tortious act. Four witnesses, Riggs, Hanna, and Jonathon Howard and Anna Kutsulis, both restaurant employees, related different accounts of the "bar incident." Those four accounts are:

1. *Riggs:* Riggs reported that Phillip and Hanna were fighting as they entered the bar. In effect, under her version, no attracting disturbance existed. The tortious act and the attracting disturbance were one act, and no time elapsed in which the tavern keeper could have averted the tortious act.

2. *Hanna:* Hanna's account really consists of two versions, one in his deposition testimony of June 28, 1993, and the other in his affidavit dated August 12, 1993. In his deposition testimony, Hanna reported that he did not argue with Phillip; everything happened so fast that he did not have time to even blink. He entered the bar, walked a few steps, saw Phillip walking toward him, Phillip "started" to yell "something," and then Phillip kicked him, which kick broke Hanna's arm as he tried to block it. Phillip kicked Hanna once more, hitting him between the neck and shoulders and knocking him to the ground on his stomach. Phillip hovered over Hanna's backside, grabbed his long hair and began dragging Hanna out of the bar, yelling "hit me or something, you [expletive deleted], so I can kill you." A fellow employee then intervened and pulled Phillip off of Hanna.

Similar to Riggs' account, this version, relied upon by Appellee in its motion for summary judgment, presents the attracting disturbance and the tortious act as one act. The tavern keeper had no opportunity to avert the tortious act.

In his later affidavit, executed after Appellee's motion for summary judgment and filed in response thereto, Hanna contradicted his deposition version by changing his account to this: Hanna entered the bar and before he could get by Phillip, Phillip began yelling vulgarities at him. At one point in his tirade, Phillip said to Hanna "come on, hit me so I can kill you." Phillip then kicked Hanna, which kick Hanna blocked with his arm, breaking it. Hanna estimated that approximately five minutes passed between the time Phillip attacked him and the two were separated.

The difference between the two versions could arguably create a question of fact

concerning the lapse of time between the attracting disturbance and the tortious act. However, this Court has previously announced a policy against allowing a party to create questions of fact by contradicting his earlier deposition testimony with an affidavit. We stated:

> The main concern of the courts faced with such an issue has been "that parties not thwart the purpose of Rule 56 by generating issues of fact through affidavits that contradict their own depositions."

*Morris v. Smith,* 837 P.2d 679, 685 (Wyo. 1992) (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1364 (8th Cir.1983)).

The factors we consider in determining whether the submission of the later affidavit constitutes an attempt to create a sham fact issue are:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Morris,* 837 P.2d at 685 (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986)). If this Court determines that the conflict between the affidavit and the earlier deposition testimony raises only a sham issue of fact, we disregard the contrary affidavit for summary judgment purposes. *Morris,* 837 P.2d at 685.

■ Our review of the present situation in light of the above-outlined factors reveals that Hanna was cross-examined during his earlier deposition testimony, he had access to the pertinent evidence since the subject matter was his own memory of the events, and, lastly, the earlier testimony did not reflect confusion which the affidavit attempted to explain. We thus, in our review of the order granting summary judgment, disregard Hanna's affidavit, which affidavit we have found void of any attempt to explain the contrary deposition testimony.

3. *Howard:* In an affidavit dated August 11, 1993, Howard recounted that the fight in the bar lasted approximately five minutes. Howard stated that he entered the bar and witnessed Phillip kicking Hanna. Phillip then screamed to Hanna "come on, hit me so I can kill you" and kicked Hanna in the arm. Howard did not specify what length of time passed between the threat and the kick.

We conclude that Howard's affidavit, filed in response to the motion for summary judgment, did not create an issue of material fact. A motion for summary judgment places an initial burden upon the movant to make a prima facie showing that no genuine issues of material fact exist; once that showing is made, the burden shifts to the nonmovant to present *specific facts* showing that genuine issues of fact do exist. *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987).

In its motion for summary judgment, Appellee relied upon Hanna's deposition testimony that no time passed between the attracting disturbance and the tortious act. In this regard, Hanna testified he did not have time to even blink between the time he entered the bar and Phillip kicked him. Hanna reiterated this when he testified that he and Phillip did not argue; everything happened too fast for either of them to say anything.

Because Howard's affidavit did not contradict Hanna's deposition testimony by specifying what length of time passed between any act which may have constituted an attracting disturbance and the tortious act, it fails to create a question of fact regarding that lapse of time.

4. *Kutsulis:* Anna Kutsulis testified early in her March 31, 1993, deposition that Phillip and Hanna argued in the bar for five to ten minutes, but by the end of her testimony she agreed it may have been closer to one or two minutes. Anna reported that Hanna and Phillip only argued in the bar; the fighting took place outside the bar. Although Anna did testify that Phillip warned Hanna to leave Louis alone or Phillip would beat him up, she did not state that Phillip issued any threats of immediate violence.

■ As we noted earlier in our discussion, an argument alone cannot create an attracting disturbance. See *Fisher,* 319 P.2d at

120. Because Anna's testimony established only that Hanna and Phillip argued, we can extract from her testimony no facts establishing an attracting disturbance. Anna's account of the events thus creates no genuine issues of material fact.

Our painstaking review of the varying accounts of the events which culminated in Hanna's injuries reveals no questions of fact concerning the attracting disturbance and the subsequent tortious act. Under the facts submitted by Appellee in its motion for summary judgment, which facts Hanna failed to refute, the tavern keeper had no opportunity to intervene and avert the tortious act. We thus affirm the district court's determination that, under the undisputed facts, Appellee owes no duty of care to Hanna.

We have concluded that the tavern keeper had no opportunity to intervene and avert the tortious act. We address lastly Hanna's contention that even if the tavern keeper had no opportunity to prevent the fight, she had the opportunity, and thus the duty, to intervene after the fight commenced.

We will assume, in addressing this argument, that the tavern keeper did have a duty to intervene and that she did breach that duty. We nonetheless find no questions of fact exist and conclude that, because under none of the accounts presented could the tavern keeper have prevented the injuries of which Hanna complains, Appellee is entitled to judgment as a matter of law.

As in our earlier summary judgment analysis, we disregard Hanna's affidavit. This leaves five minutes as the longest reported duration of the fight, as estimated by Howard. However, as we noted earlier, Howard's affidavit failed to specify what length of time elapsed between Phillip's threat and his kick to Hanna's forearm. Howard's affidavit also neglected to specify what length of time elapsed between the beginning of the fight and Phillip's kicks to Hanna's forearm and neck. We rely then upon Hanna's deposition testimony which specified that Hanna sustained his most serious injuries, the initial kick to his forearm and the second kick to his neck, as the fight started and within seconds thereafter.

Whether the tavern keeper's intervention had been in the form of summoning police assistance or in physically separating Phillip and Hanna, and even if we accept as true Howard's estimate that the fight lasted five minutes, beginning to end, the tavern keeper's intervention could not have prevented the injuries which formed the basis of Hanna's damages claim, i.e., the kicks to his forearm and neck. Hanna sustained the injuries too quickly for intervention of any sort. We thus conclude no questions of fact exist and, as a matter of law, the tavern keeper's failure to intervene after the fight commenced was not the proximate cause of Hanna's injuries.

## CONCLUSION

The decision of the district court is affirmed: