Linda GARCIA, Appellant (Plaintiff),

v.

UNIWYO FEDERAL CREDIT UNION,
Appellee (Defendant).

No. 95–86.

Supreme Court of Wyoming.

June 25, 1996.

Michael Schilling, Laramie, for appellant.

C.M. Aron and James R. Clark of Aron and Hennig, Laramie, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Linda Garcia was employed by UniWyo Federal Credit Union for just over six months before being terminated without expression of cause. Asserting a variety of bases, Garcia sued UniWyo for damages stemming from her termination. Concluding that there is no genuine issue of material fact with respect to Garcia being an at will employee, we affirm the district court's entry of summary judgment for UniWyo.

## I. ISSUES

Appellant, Linda Garcia (Garcia), consolidates various arguments in her statement of a single issue:

Are there genuine issues of material fact which preclude summary judgment in favor of the appellee on appellant's claims for breach of implied employment contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel?

Appellee, UniWyo Federal Credit Union (UniWyo), states the issues:

I. Was appellant an at will employee, subject to discharge at any time for any reason?

II. Is the at will presumption eliminated for all employees if the employer assigns its manager the responsibility, among others, to discharge employees for cause?

III. Can a new employee create a *Wilder* special relationship by performing a pre-existing duty as "separate consideration"?

IV. Can an employee impose a promissory estoppel obligation on the employer merely by reporting "concerns" about "management style"?

## II. FACTS

Garcia was hired by UniWyo to manage its loan department without any express contract of employment. UniWyo's President, Karen Stapp (Stapp), hired and supervised Garcia.

During Garcia's employment with UniWyo, an incomplete collection of general "Personnel Policies" existed which were adopted piecemeal between August of 1982 and March of 1993. The personnel policies vest broad discretionary powers in a "Manager," a reference to UniWyo's President.

UniWyo's Personnel Policy P–3, adopted August 20, 1987, reads, in pertinent part:

The Manager is responsible for hiring employees, prescribing their duties and work hours, fixing wages, approving leave, suspending, demoting or discharging for cause all within limitations prescribed by the Board of Directors.

\* \* \* \* \* \*

All new employees shall be on a 6–month probationary status. During this period, the employee shall be informed of his/her progress.

UniWyo's Personnel Policy P–3 also classifies UniWyo employees as permanent full-time, permanent part-time, and temporary.

Six months and a few days after being hired, Garcia was terminated without expression of cause. Garcia filed suit, and the district court granted summary judgment in favor of UniWyo, concluding Garcia had no legitimate expectation of anything other than at will employment.

## III. STANDARD OF REVIEW

Where no material facts are at issue, summary judgment is a desirable means of expeditiously confronting underlying questions of law. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293, 1297 (Wyo.1995). If issues of material fact persist, summary judgment is improper. *Hanna v. Cloud 9, Inc.*, 889 P.2d 529, 532 (Wyo.1995). A fact is material if its proof tends to establish or refute any element of a cause of action or an asserted defense. *Wil-*

*der v. Cody Country Chamber of Commerce,* 868 P.2d 211, 216 (Wyo.1994).

Appellate scrutiny of summary judgments entails a *de novo* review of the same materials available to the district court, affording that court's findings no particular deference. *Daily v. Bone,* 906 P.2d 1039, 1042 (Wyo.1995). Every indulgence is reserved for the party opposing summary judgment, granting that party's position all favorable inferences fairly to be drawn from the record. *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1325 (Wyo.1995).

Establishment of a prima facie case for summary judgment obliges the party resisting to marshall admissible evidence, rather than general or conclusory allegations, manifesting existence of issues of fact. *Hanna,* 889 P.2d at 534. The bare assertion that questions of fact remain, absent evidentiary support, will not deflect a prima facie case *for* summary judgment. *Verschoor,* 907 P.2d at 1297.

## IV. DISCUSSION

### A. IMPLIED IN FACT CONTRACT

Garcia claims that UniWyo's Personnel Policy P–3, by distinguishing probationary from permanent employees and giving the Manager responsibility for "discharging [employees] for cause[,]" afforded her a legitimate expectation of permanent employment from which she might only be discharged for cause. At the very least, Garcia argues that the personnel policy constituted an ambiguous contract. Such ambiguity, she contends, makes interpretation of the contract a mixed question of fact and law, leaving the case inappropriate for summary judgment.

Employment contracts are presumed to be at will in Wyoming and, absent more, discharge may occur without cause. *Alexander v. Phillips Oil Co.,* 707 P.2d 1385, 1386 (Wyo.1985) (*quoting Siebken v. Town of Wheatland,* 700 P.2d 1236, 1237 (Wyo.1985)). However, personnel policies or an employee handbook may rebut that presumption, giving employees contractual rights founded upon consideration flowing to the employer in the form of a more orderly, cooperative and loyal work force. *Leithead v. American Colloid Co.,* 721 P.2d 1059, 1062–63 (Wyo. 1986) (*citing Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 707 (Wyo.1985)).

Recognition of such implied in fact contracts of employment occasions no need for departure from our usual rules of contract interpretation. *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 988 (Wyo.1991) (*McDonald II* ). Summary judgment remains appropriate when the contract in question is unambiguous. *Martin v. Farmers Ins. Exchange,* 894 P.2d 618, 620 (Wyo.1995).

Whether a contract is ambiguous constitutes a question of law. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993). Absent ambiguity, *interpretation* of implied in fact contracts is a question of law. *Feather v. State Farm Fire and Cas.,* 872 P.2d 1177, 1180 (Wyo.1994). We search for objective manifestations sufficient to create reasonable reliance by the party claiming benefit. *McDonald II,* 820 P.2d at 990. UniWyo's personnel policies constitute a contract and will be read as a whole. *Alexander,* 707 P.2d at 1389. Each provision is read in light of the others to find the plain meaning of the document. *Martin,* 894 P.2d at 620. We also look past specific terms to the general tenor of employee handbooks. *Leithead,* 721 P.2d at 1063.

UniWyo's personnel policies are general statements on policy, fragmented in nature, adopted in piecemeal fashion on increasingly remote occasions. Both parties argue that many of the personnel policies are observed principally in the breach.

The question is whether the personnel policies' denomination of probationary and permanent employees, taken with the Manager's prerogative to discharge employees for cause, engender a legitimate expectation of permanent employment on Garcia's part. The first hint of an answer comes in the generally unavailing search for a distinction between permanent and probationary employees.

Probationary employees are evaluated at the end of six months while permanent employees are evaluated once a year. Permanent employees may earn leave time while probationary employees may not. Significantly, the Manager's prerogative to discharge for cause fails to discriminate between probationary and permanent employees.

Personnel policy assignment of managerial responsibility, *inter alia*, for "discharging [employees] for cause * * * within limitations prescribed by the Board of Directors" creates no implied in fact contract. We have consistently required something more of handbooks, be it clarification of what constitutes cause or a progressive discipline schedule. *See, e.g., Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo.1994) and cases cited therein. Neither is present in UniWyo's personnel policies.

 UniWyo made a prima facie case for summary judgment, obliging Garcia to muster competent, admissible evidence to the contrary. Garcia's rejoinder: "I just feel like there needs to be a cause[.]" Such feelings create no material issue of fact. Summary judgment on the implied in fact contractual claim was proper.

### B. The *Wilder* Special Relationship

 Three days prior to her termination, Garcia and another employee asked for a meeting with at least one member of UniWyo's Board of Directors and some members of the Supervisory Committee, a panel serving an oversight function. *See* 12 U.S.C. § 1761. According to Garcia, the purpose of that meeting was "to discuss [her] own and the staff's experiences with and concerns about [UniWyo's President] Karen Stapp." Garcia wanted that meeting to be kept a secret from Stapp and asked for such assurances from those present. Other employees present at the meeting recall *some* assurance of confidentiality, but could neither reiterate the exact nature of the pledge nor identify the maker. According to Garcia, "[t]hey weren't supposed to go to Karen [Stapp] and to tell Karen what [we] were doing."

A Board member present at the meeting later informed the Board's President, who then briefed Stapp on the identity of those present as well as what had been discussed. One day later, Stapp terminated Garcia.

 All contracts of employment in Wyoming contain an implied covenant of good faith and fair dealing, but we limit actions upon such covenants to those rare and exceptional cases where a special relationship has been demonstrated between employer and employee. *Wilder*, 868 P.2d at 220–22. The implied covenant of good faith and fair dealing may, upon demonstration of a special relationship, serve to redress the inherent imbalance between corporations and individual employees. *Wilder*, 868 P.2d at 221; *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 858 (Wyo.1990).

 Usually, the special relationship giving employees an action on the implied covenant of good faith and fair dealing stems from a long term employment relationship coupled with a discharge calculated to avoid employer responsibilities to the employee, e.g., benefits or commissions. *See Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977); *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1366–69 (1987). The duration of an employment relationship over a period of years is not sufficient, alone, to give rise to a special relationship. We are aware, however, of no case in which such a special relationship has ripened over a period of mere months. *See, e.g., D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 215 (1991).

Employed for just over six months prior to termination, Garcia could hardly leverage a self-initiated coffee klatsch with sundry Board and Supervisory Committee members into the basis of a special relationship. Further, there is no evidence that UniWyo used Garcia's termination to avoid benefits earned under the contract of employment. *Wilder*, 868 P.2d at 222.

### C. Promissory Estoppel

 Finally, fortified by dictum from *Ware v. Converse County School Dist. No. 2*, 789 P.2d 872, 875 (Wyo.1990), Garcia would

parlay her secret meeting with various Board and Supervisory Committee members into a case for promissory estoppel. Promissory estoppel, as a cause of action in employment cases, first appeared in *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo. 1990), *reh'g granted* 820 P.2d 986 (Wyo.1991) (*McDonald I*). *Ware*, published the same day as *McDonald I*, relied upon the latter with respect to promissory estoppel. Whatever precedential value *McDonald I* may have conveyed was extinguished, following rehearing, by *McDonald II*, 820 P.2d 986, which superseded *McDonald I*.

We have, then, yet to definitively rule on the availability of promissory estoppel in the employment context. This case affords no opportunity for such a ruling. Even were promissory estoppel available, Garcia's inability to sustain a factual issue as to the authority of *anyone* present at the secret meeting to bind UniWyo would doom her opposition to summary judgment. *Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 251 (Wyo. 1992) (*citing United States v. Certain Parcels of Land in City of Cheyenne, Laramie County, Wyo.*, 141 F.Supp. 300, 309 (D.Wyo. 1956)).

## V. CONCLUSION

Disregard for chain of command may be required to combat illegality, but going over a supervisor's head merely to critique management style is an unlikely path to tenure. When Garcia reached the six month anniversary of her employment, her supervisor, Stapp, had been UniWyo's Manager/President for the preceding fifteen years. It was then, at best, a curious decision for Garcia to request a meeting with Stapp's superiors to criticize her management style. Whether or not Garcia's actions hastened her termination, she could scarcely have expected they would enhance her job security.

Only total disregard of Wyoming's at will presumption might elevate UniWyo's ragtag personnel policies into something arguably approaching an implied in fact contract of permanent employment. In the absence of competent, admissible evidence to the contrary, Garcia is presumed to have been ter-

minable at will. Summary judgment for Uni-Wyo is affirmed.

MACY, Justice, dissenting.

I must dissent from the majority's holding in this case because I am not convinced that we can ignore UniWyo's Personnel Policy P–3. That policy expressly rebutted the presumption that Garcia was an "at-will" employee by stating that all new employees serve a six-month probationary period and by specifically declaring that an employee's discharge would be for cause. *See, e.g., Loghry v. Unicover Corporation*, 878 P.2d 510 (Wyo.1994); *Lincoln v. Wackenhut Corporation*, 867 P.2d 701 (Wyo.1994). Questions of fact, therefore, remain as to whether or not UniWyo had just cause to terminate Garcia's employment. The summary judgment which the district court granted in favor of UniWyo should be reversed, and the case should be remanded for further proceedings.