**Jessalyne DEDNER, Plaintiff,**

v.

**State of OKLAHOMA, Defendant.**

No. 98–438–S.

United States District Court, E.D. Oklahoma.

March 18, 1999.

Mark Edwards, McAlester, OK, for Plaintiff.

Karin M. Kriz, Charles K. Babb, Oklahoma City, OK, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SEAY, District Judge.

This is an action for sexual harassment brought by Jessalyne Dedner ("Dedner") against her employer, the State of Oklahoma ("the State"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* Dedner also asserts a pendent state claim under Oklahoma law for intentional infliction of severe emotional distress.

Dedner contends that during the course of her employment with the Oklahoma Department of Corrections ("DOC") as a correctional food service supervisor at the Mack Alford Correctional Center she was sexually harassed by her supervisor, Venson Taylor ("Taylor"), from November 1996 until January 22, 1997. As part of her sexual harassment claim, Dedner asserts Taylor conditioned job benefits, in the form of days off from work, on her willingness to have sex with him. The State does not deny Dedner was sexually harassed by its employee, Taylor, but contends there is no basis for a finding of employer liability under Title VII. To this end, the State has filed a motion for summary judgment on Dedner's Title VII claim. For the reasons stated below, the court finds the State's motion for summary judgment should be granted.

### I.

Dedner began her employment with the DOC on November 3, 1994, as a correctional food service supervisor at the Mack Alford Correctional Center. Taylor, who was Dedner's supervisor, was terminated from his position with the DOC on October 31, 1995, based on allegations he sexually harassed two female food service supervisors, Christy Horn ("Horn") and Tommie Bryant ("Bryant"). Taylor appealed his termination. During the course of the hearing on Taylor's appeal before the Oklahoma Merit Protection Commission ("OMPC"), Dedner testified she had not had problems with Taylor and that she had never seen Taylor make any sexual overtures to, or engage in sexually harassing behavior towards, either Horn or Bryant. On February 26, 1996, the OMPC sustained Taylor's appeal and ordered him immediately reinstated to his former position with full back pay and benefits.

Taylor returned to work sometime in March 1996. In November 1996, Dedner began having problems with Taylor and his sexually harassing behavior. Various incidents of sexually harassing conduct occurred between November 1996 and January 22, 1997. Included among these were comments made by Taylor to Dedner that "she needed to put some Band–Aids over her nipples", that he could "eat" Dedner, and that he needed to "relieve himself" because his wife was making him sleep on the couch. Another incident occurred on January 7, 1997. On that date, Taylor went to Dedner's apartment—after having been counseled by DOC officials not to go to any employee's residence—and chased Dedner around her apartment and went into her bedroom and undressed down to his underwear. Dedner became upset and told Taylor to get dressed. After getting dressed, Taylor grabbed Dedner by the hair and tried to kiss her. Taylor stuck his tongue into Dedner's mouth and she bit his tongue. Taylor then left Dedner's apartment. Another incident of sexual harassment took place on January 14, 1997, when Taylor followed Dedner into a storage area at work, grabbed her, and tried to kiss her. Dedner resisted and Taylor left.

The final incident which led to Dedner reporting Taylor's behavior to DOC officials occurred on January 17, 1997. On that date, Taylor snatched keys from Dedner and kicked a five gallon plastic jug, hitting her in the back of the legs. On January 22, 1997, Dedner, for the first time, reported Taylor's inappropriate behavior and conduct to DOC officials. On that same date, Taylor was placed on leave without pay and given a cease and desist

order by DOC officials. On February 27, 1997, Taylor was terminated from his employment with the DOC and that termination was eventually upheld on June 17, 1997, by the OMPC. In April 1998, Dedner was promoted to position of superintendent of food service at the Frederick Community Work Center.

## II.

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court announced standards for determining whether an employer is vicariously liable for its supervisor's sexually harassing conduct. The *Ellerth* Court noted "that the labels quid pro quo and hostile work environment are not controlling for purposes of establishing employer liability." *Ellerth*, 118 S.Ct. at 2271. Instead of evaluating a plaintiff's claim based on a classification of that claim as either quid pro quo or hostile work environment, the Court articulated a standard which recognizes a distinction between two classes of cases, those in which "a supervisor takes a tangible employment action against the subordinate," *id.* at 2268, and those where "the agency relation aids in commission of supervisor harassment which does not culminate in a tangible employment action," *id.* at 2269.

In cases where a supervisor's harassment of an employee culminates in a tangible employment action such as a discharge, demotion, or undesirable reassignment, the employer is vicariously liable to the employee regardless of whether the employer knew or should have known of the harassment and regardless of whether the employer took appropriate remedial action to bring the harassment to an end after learning of it. *See Faragher*, 118 S.Ct. at 2292–93; *Ellerth*, 118 S.Ct. at 2270. When no tangible employment action is taken in connection with a supervisor's sexually harassing conduct, the employer is still vicariously liable for the hostile work environment created by its supervisor, *unless* the employer can prove a two-pronged affirmative defense by the preponderance of the evidence: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 118 S.Ct. at 2270; *Faragher*, 118 S.Ct. at 2293.

In this case, a fair interpretation of Dedner's allegations contained within her complaint and the pretrial order, as well as the parties' arguments raised in their summary judgment briefs, reveals an attempt by Dedner to impose liability on the State under both theories. First, Dedner claims she suffered a tangible employment action because her ability to have days off from work was conditioned on her willingness to have sex with Taylor. In a related context, Dedner has submitted an affidavit wherein she states she received fewer weekend days off than other workers—presumably because she refused Taylor's sexual advances.[1] Second, absent a find-

1. In her affidavit submitted as a supplemental response to the State's summary judgment motion, Dedner, for the first time, attempts to interject Taylor's alleged scheduling her for "undesirable shift work such as early morning shift work or back to back shift work" as a basis for a tangible employment action. A review of Dedner's previous deposition testimony, however, reveals Dedner based her claim of a tangible employment action only on Taylor's conditioning days off from work on her submission to sexual relations with him. Thus, Dedner's deposition testimony and her recently submitted affidavit stand in direct conflict as to the nature of the alleged tangible employment action. Under the circumstances of this case, the court concludes Dedner's statement in her affidavit about undesirable or harsher shift work is simply an attempt to create a sham fact issue and, therefore, it must be disregarded. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)(court may disregard an affidavit that conflicts with the affiant's prior deposition testimony if the conflicting affidavit represents "an attempt to create a sham fact is-

ing of a tangible employment action, Dedner contends the State is nonetheless vicariously liable for Taylor's actions amounting to a hostile work environment because the State cannot prove its two-pronged affirmative defense as outlined under *Ellerth* and *Faragher.* In particular, Dedner asserts the State, by reinstating Taylor to his former position without proper monitoring and counseling, has failed to exercise reasonable care to prevent and correct Taylor's sexually harassing behavior. Moreover, Dedner contends her failure to timely report Taylor's harassment can be excused "due to the fact that other employees have filed complaints without results or adverse consequences to Mr. Taylor." The court finds Dedner's position on employer liability untenable under both theories.

In *Ellerth,* the Supreme Court noted that "[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Ellerth,* 118 S.Ct. at 2269. Thus, according to *Ellerth,* when a supervisor takes an action amounting to a tangible employment action, such action becomes the action of the employer and the employer is necessarily liable. *See id.* Although the Supreme Court did not specifically define a "tangible employment action," it did state that such an action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268. Some examples of tangible employment actions cited by the Supreme Court included termination of employment, a demotion with a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities. *See Crady v. Liberty Nat. Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993). The Supreme Court also cited examples of alleged employment actions which did not suffice to establish a tangible employment action. *See Flaherty v. Gas Research Institute,* 31 F.3d 451, 456 (7th Cir.1994)("bruised ego" not enough); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 887 (6th Cir.1996) (demotion without change in pay, benefits, duties, or prestige); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994)(reassignment to more inconvenient job).

█ In this case, the alleged tangible employment action taken by the State is a refusal to allow Dedner to take specified days off from work, including weekend days. A refusal to allow an employee to have specified days off from work, however, does not amount to "a significant change in employment status" as defined by the Supreme Court. *Ellerth,* 118 S.Ct. at 2268–69. These allegations, if true, fall into the category of employment actions which are a mere inconvenience to an employee, and not a significant change in her employment status. *See Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 (10th Cir.1998)(lateral transfers without alteration of job responsibilities); *Harlston,* 37 F.3d at 382 (reassignment to more inconvenient job); *Reinhold v. Commonwealth of Virginia,* 151 F.3d 172, 175 (4th Cir.1998)(assignment of extra work). Taylor did not discharge, demote, reassign, or otherwise significantly change Dedner's job responsibilities.[2] Moreover, although not determinative of the issue, the record does not suggest Taylor's alleged conduct

sue."); *see also Durtsche v. American Colloid Co.,* 958 F.2d 1007, 1010 (10th Cir.1992). In support of this conclusion, the court references not only Dedner's failure to assert such a basis during her deposition, but also the fact she never alleged it as a basis for a finding of a tangible employment action in her complaint or pretrial order.

2. Although not relevant to the determination of whether Dedner was subjected to a tangible employment action during the course of Taylor's sexually harassing conduct, the court does note that Dedner was promoted to superintendent at the Frederick Community Work Center in April 1998.

inflicted direct economic harm on Dedner. Under these circumstances, the court concludes Dedner has not suffered a tangible employment action sufficient to impose automatic liability on the State for Taylor's actions.

■ Even assuming a refusal to allow an employee certain days off, including weekend days, is sufficient to establish a tangible employment action, the record before the court fails to substantiate Dedner's conclusory allegations in this respect. First, as to Taylor denying her certain days off, Dedner submits the hearsay statement in her affidavit that Taylor instructed Steve Dicarlo ("Dicarlo"), a supervising food service superintendent, to deny her requests for days off. Dicarlo's affidavit, however, refutes this contention and establishes that Dedner was denied leave only when she did not have sufficient leave accumulated or when another employee had already requested the day off. Additionally, the State submits the affidavit of Bobby Boone, warden at Mack Alford Correctional Center, who states a review of DOC records fails to reveal any leave request denials by Taylor involving Dedner. Under DOC policy, employees seeking to take a day off are required to submit a written request for leave form to their immediate supervisor.

Second, as to Dedner's conclusory allegation that she received fewer weekend days off than other kitchen employees, the record establishes otherwise. A comparison of Dedner's time records with those of other kitchen workers for the period of March 1996 to January 1997 reveals Dedner was not treated less favorably than the other workers with respect to weekend days off. Dedner typically worked a five-day week with two consecutive days off, including at least one weekend day off. Other kitchen workers had similar schedules. The time records do not show any other kitchen worker having a more favorable schedule, i.e., no other kitchen worker received both Saturday and Sunday off during the relevant time period. Thus, the record does not support Dedner's claim that she received fewer weekend days off than other employees.

As stated above, the second class of actions identified by the Supreme Court in *Ellerth* and *Faragher* for holding employers vicariously liable for its supervisor's involves the situation where the employee does not suffer a tangible employment action. Vicarious liability will still attach in those cases *unless* the employer can prove its two-pronged affirmative defense. In this case, the undisputed record mandates a finding that the State has proven its affirmative defense by a preponderance of the evidence.

■ As to the first element of the defense, the court finds the State clearly exercised reasonable care to prevent and correct promptly Taylor's sexually harassing behavior. It is undisputed the State first learned of Taylor's sexual harassment of Dedner when Dedner reported the incidents on January 22, 1997. On that same day, the State placed Taylor on leave and gave him a cease and desist order. On February 27, 1997, the State terminated Taylor's employment—a decision which was upheld by the OMPC on June 9, 1997. The State's response to Dedner's claims of sexual harassment was swift and effective. Upon learning of Taylor's conduct, the State immediately removed him from the employment setting. By doing so, the State eliminated Taylor's ability to sexually harass Dedner during the course and scope of her employment. Under these circumstances, the State clearly acted with reasonable care to promptly correct Taylor's behavior.

Dedner also argues the State failed, in the first instance, to prevent Taylor from sexually harassing her by reinstating him to his former position after having terminated him for sexually harassing Horn and Bryant, and by failing to properly counsel Taylor about inappropriate behavior upon his reinstatement. This argument is without merit. The State had no choice but to reinstate Taylor to his former position after the OMPC upheld Taylor's appeal of

his termination and ordered his reinstatement. Moreover, during the course of the proceedings on Taylor's initial termination there was never any indication that Taylor sexually harassed Dedner. In fact, Dedner testified favorably for Taylor during those proceedings by stating she had never experienced any problems with Taylor. Finally, the record is clear that upon his reinstatement Taylor was extensively counseled by DOC officials about appropriate conduct in the workplace.

Turning to the second element of the State's affirmative defense, the court finds the State has proven that Dedner unreasonably failed to take advantage of preventive or corrective opportunities provided by the State. The State had in place an anti-harassment policy and a complaint procedure for employees to utilize in the event they believe they were being subjected to sexual harassment. Dedner did not take advantage of these procedures until January 22, 1997—some three months after the sexual harassment by Taylor first began. Thus, she failed to utilize these procedures to avoid the harm occasioned by Taylor's conduct occurring before January 22, 1997. In her brief, Dedner contends her failure to utilize the complaint procedures should be excused because of her belief that other employees had done so to no avail with respect to Taylor's conduct. This belief was not reasonable, however, given the fact the State had previously taken action against Taylor by ordering his termination based on the prior incidents involving Horn and Bryant. In addition, this belief articulated in Dedner's brief is contradictory to her earlier deposition testimony wherein she stated she did not immediately report Taylor's conduct because she "thought he would back off." Under these circumstances, the only conclusion to be reached is that Dedner unreasonably failed to take advantage of the State's anti-harassment policies and procedures so as to avoid Taylor's sexually harassing behavior.

### III.

Based on the foregoing reasons, the court finds the State's motion for summary judgment on Dedner's Title VII sexual harassment claim should be granted. With respect to Dedner's pendent state law claim for intentional infliction of severe emotional distress, case law in this circuit suggests that when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over state law claims and allow the plaintiff to pursue those claims in state court. *See Ball v. Renner,* 54 F.3d 664, 669 (10th Cir.1995); 28 U.S.C. § 1367(c)(3) (stating that when all federal claims are dismissed, district court may decline to exercise jurisdiction over remaining state claims). Consequently, Dedner's claim for intentional infliction of severe emotional distress is dismissed without prejudice.